**MICHIGAN UNITED FOOD AND COMMERCIAL WORKERS UNIONS and Food Employers Health and Welfare Fund, and the Board of Trustees thereof; and Michigan United Food and Commercial Workers Unions Drug and Mercantile Employees Welfare Fund, and the Board of Trustees thereof, Plaintiffs-Appellees,**

v.

**Nancy A. BAERWALDT, Commissioner of Insurance of the State of Michigan; Jean Carlson and Thomas Pierson, Deputy Commissioners of Insurance of the State of Michigan; and the Bureau of Insurance of the State of Michigan, Defendants-Appellants.**

No. 83–1570.

United States Court of Appeals,
Sixth Circuit.

Argued Sept. 18, 1984.

Decided July 19, 1985.

Frank J. Kelley, Atty. Gen. of Mich., Lansing, Mich., William A. Chenoweth, Asst. Atty. Gen. (argued), for defendants-appellants.

Theodore Sachs (argued), Detroit, Mich., for plaintiffs-appellees.

Before KEITH, Circuit Judge, and PECK and BROWN, Senior Circuit Judges.

BAILEY BROWN, Senior Circuit Judge.

Plaintiffs are two voluntary, unincorporated employee benefit trust funds, and the trustees thereof. The plaintiff plans were established to provide health and welfare benefits to participating union employees and their beneficiaries and are "employee welfare benefit plans" as defined by the Employee Retirement Income Security Act (ERISA), 29 U.S.C. §§ 1001–1461. Defendants are the Michigan Bureau of Insurance, Michigan's Commissioner of Insurance and her deputy commissioners.

The plaintiffs brought this action seeking to invalidate Michigan Public Act 429 of 1980, which required that all health insurance policies issued in Michigan provide certain levels of substance abuse coverage. Plaintiffs contended that Act 429, as applied to plaintiffs, was pre-empted by ERISA and therefore was unconstitutional under the Supremacy Clause. Plaintiffs also contended that Act 429 impermissibly interfered with the freedom of unions and employers to bargain freely and therefore was pre-empted by the National Labor Relations Act (NLRA).

The district court, 572 F.Supp. 943 (D.C. Mich.1983), granted plaintiffs' motion for summary judgment and held that Public Act 429 was pre-empted by both the ERISA and the NLRA. In light of the Supreme Court's recent opinion dealing directly with these issues, *Metropolitan Life Insurance Company v. Massachusetts,* —— U.S. ——, 105 S.Ct. 2380, 85 L.Ed.2d 728 (1985), we reverse.

## I.

The plaintiff plans are voluntary, unincorporated employee benefit trust funds established pursuant to the Labor Management Relations Act for the purpose of providing health and welfare benefits to covered employees of participating employers and their dependents. To accomplish this goal, the plans purchased group insurance policies from insurer Transamerica Occidental Life Insurance Company (Occidental). Through a contract with Occidental, the plans pay all the health and welfare benefits provided under the group policies up to an agreed upon amount (termed "claims liability limit"). After the claims liability limit is reached, Occidental is liable for payment of additional benefits under the applicable policies. Thus, the plaintiff plans are self insured up to the claims liability limit, beyond which they are insured for excess or catastrophic loss. Occidental does, however, fully administer the plans as agent for the plans.

This action was precipitated by the Michigan legislature's enactment of 1980 Michigan Public Act No. 429, which required every insurer offering health insurance policies within the state to provide coverage for substance abuse. Mich.Comp.Laws Ann. § 500.3425 (1983).[1] Act 429 was enacted as part of Michigan's continuing ef-

fort to deal with the problem of drug and alcohol abuse. The state estimates that approximately 750,000 of its citizens need services for drug abuse problems. In addition to the human suffering associated with drug and alcohol abuse, substance abuse results in absenteeism, increased health and welfare expenditures, property damage and accidents, and medical expenses—the annual cost of which is estimated to approach two billion dollars in Michigan alone. Additionally, the cost of lost productivity stemming from substance abuse exceeds $700 million annually in Michigan. By requiring that all insurance policies issued within the state provide specified levels of substance abuse coverage, the state hoped to encourage earlier treatment of drug and alcohol problems and to decrease the cost of abuse coverage by spreading the cost across a larger population.[2]

Although the plaintiff plans include some coverage for substance abuse treatment, the plans do not meet the requirements of Act 429. Fearing loss of its ability to do business in Michigan, Occidental informed the plaintiff plans that Occidental intended to require the plans to include the benefits specified in Act 429, contrary to the wishes of the plans' trustees. Because the plans' trustees did not wish to amend the plans in compliance with Act 429, plaintiffs filed this action against the Michigan Commissioner of Insurance and others, seeking a declaratory judgment that Act 429 is pre-empted by ERISA and the NLRA and therefore is inapplicable to the plaintiff plans.

## II.

■ ERISA, 29 U.S.C. §§ 1001–1461, is a comprehensive statutory scheme designed to promote and protect the interests of

---

**1.** Act 429 provides in part:
Each insurer offering health insurance policies in this state shall provide coverage for intermediate and outpatient care for substance abuse, upon issuance or renewal, in all contracts for, group and individual hospital, medical, surgical expense-incurred health insurances policies other than limited classification policies.

Mich.Comp.Laws Ann. § 500.3425(1) (1983).

**2.** If the statutorily required substance abuse coverage increased the premium cost by three percent or more, then Act 429 provides that the master policy holder has the option of declining the increased substance abuse coverage. Mich. Comp.Laws Ann. § 500.3425(2) (1983).

employees and their beneficiaries in employee benefit plans.[3] See 29 U.S.C. § 1001. In formulating ERISA, Congress imposed upon welfare benefit plans a number of reporting and disclosure requirements, 29 U.S.C. §§ 1021–1031, 1101–1104; but Congress did "not attempt to regulate the substantive content of welfare-benefit plans," *Metropolitan Life Insurance Company v. Massachusetts,* —— U.S. ——, ——, 105 S.Ct. 2380, 2385, 85 L.Ed. 728 (1985). Although ERISA does not dictate the substantive content of welfare benefit plans, ERISA does contain a broad preemption clause providing that, unless certain exceptions apply, ERISA "shall supersede any and all State laws insofar as they may now or hereafter relate to any employee benefit plan." 29 U.S.C. § 1144(a).[4] This ostensibly broad pre-emption clause is limited, however, by an insurance saving clause, 29 U.S.C. § 1144(b)(2)(A). The insurance saving clause states that, with one exception, nothing in ERISA "shall be construed to exempt or relieve any person from the law of any State which regulates insurance, banking, or securities." 29 U.S.C. § 1144(b)(2)(A).

Even a cursory reading of both the pre-emption clause and the saving clause reveals the conflict between them. While the pre-emption clause dictates that ERISA supersede all state laws relating to employee benefit plans, which plans include insurance benefits, the saving clause dictates that ERISA not be construed to excuse compliance with state insurance laws. The complication created by this conflict is further confused by the deemer clause, an exception to the saving clause. The deemer clause states:

> Neither an employee benefit plan ... nor any trust established under such a plan, shall be deemed to be an insurance company or other insurer, bank, trust company, or investment company or to be engaged in the business of insurance or banking *for purposes of any law of any State purporting to regulate* insurance companies, *insurance contracts,* banks, trust companies, or investment companies.

29 U.S.C. § 1144(b)(2)(B) (emphasis added).

As can be gathered from this skeletal recital of ERISA's pertinent passages, portions of the Act are convoluted and seemingly contradictory. We find ourselves able to resolve ERISA's internal conflicts, however, because the Supreme Court

---

3. An "employee welfare benefit plan" is

any plan, fund, or program which was heretofore or is hereafter established or maintained by an employer or by an employee organization, or by both, to the extent that such plan, fund or program was established or maintained for the purpose of providing for its participants or their beneficiaries, through the purchase of insurance or otherwise, (A) medical, surgical, or hospital care or benefits, or benefits in the event of sickness, accident, disability, death or unemployment, or vacation benefits, apprenticeship or other training programs, or day care centers, scholarship funds, or prepaid legal services, or (B) any benefit described in section 186(c) of this title (other than pensions on retirement or death, and insurance to provide such pensions).

29 U.S.C. § 1002(1).

An "employee benefit plan" or "plan"

means an employee welfare benefit plan or an employee pension benefit plan or a plan which is both an employee welfare benefit plan and an employee pension benefit plan.

29 U.S.C. § 1002(3).

4. 1144. *Other Laws*

(a) [PRE–EMPTION CLAUSE] Except as provided in subsection (b) of this section, the provisions of this subchapter and subchapter III of this chapter shall supersede any and all State laws insofar as they may now or hereafter relate to any employee benefit plan described in section 1003(a) of this title and not exempt under section 1003(b) of this title....

(b)(2)(A) [SAVING CLAUSE] Except as provided in subparagraph (B), nothing in this subchapter shall be construed to exempt or relieve any person from any law of any State which regulates insurance, banking, or securities.

(B) [DEEMER CLAUSE] Neither an employee benefit plan described in section 1003(a) of this title, which is not exempt under section 1003(b) of this title ..., nor any trust established under such a plan, shall be deemed to be an insurance company or other insurer, bank, trust company, or investment company or to be engaged in the business of insurance or banking for purposes of any law of any State purporting to regulate insurance companies, insurance contracts, banks, trust companies, or investment companies.

312

has explicitly laid out a trail for us. In *Metropolitan Life Insurance Company v. Massachusetts*, — U.S. ——, 105 S.Ct. 2380, 85 L.Ed.2d 728 (1985), the Supreme Court faced precisely the issue that confronts us in the case at bar and upheld the challenged state statute. The Commonwealth of Massachusetts had enacted a statute requiring that all insurance policies issued to Massachusetts residents provide certain levels of coverage for the treatment of mental illness. The Massachusetts statute was challenged by insurance companies that contended that the statute was preempted by both ERISA and the NLRA, and thus was invalid. Justice Blackmun, writing for a unanimous court,[5] first noted that states had long regulated insurance, including group health insurance. The Massachusetts insurance statute was characterized by the Court as a "mandated-benefit law," which requires "an insurer to provide a certain kind of benefit to cover a specified illness or procedure whenever someone purchases a certain kind of insurance." *Id.* at ——, 105 S.Ct. at 2383. The Court concluded that the Massachusetts mandated-benefit law related to an employee benefit plan within the meaning of the pre-emption clause, 29 U.S.C. § 1144(a). *Id.* at ——, 105 S.Ct. at 2388. The Court also found that the Massachusetts mandated-benefit law regulated the terms of certain insurance contracts and therefore seemed to be saved from pre-emption by the saving clause because the statute was a law "which regulates insurance," 29 U.S.C. § 1144(b)(2)(A). *Id.* Acknowledging that the preemption and the saving clauses were "not a model of legislative drafting," *id.*, the Court then explored the saving clause and its relationship to the deemer clause and concluded that:

> [b]y exempting from the saving clause laws regulating insurance contracts that apply directly to benefit plans, the deemer clause makes explicit Congress' intention to include laws that regulate insurance contracts within the scope of the insurance laws preserved by the saving

clause. Unless Congress intended to include laws regulating insurance contracts within the scope of the insurance saving clause, it would have been unnecessary for the deemer clause explicitly to exempt such laws from the saving clause when they are applied directly to benefit plans.

*Id.* at ——, 105 S.Ct. at 2390. The Court then held that "mandated-benefit laws ... are saved from pre-emption by the operation of the saving clause," *id.* at ——, 105 S.Ct. at 2392 (footnote omitted); therefore, "[i]f a state law 'regulates insurance,' as mandated-benefit laws do, it is not preempted [by ERISA]." *Id.* at ——, 105 S.Ct. at 2393.

As further support for its conclusion that the Massachusetts mandated-benefit law was a valid exercise of state power, the Court looked to the McCarran-Ferguson Act, 15 U.S.C. §§ 1011–1015, which states in part:

> No Act of Congress shall be construed to invalidate, impair, or supersede any law enacted by any State for the purpose of regulating the business of insurance ...

15 U.S.C. § 1012(b). The Court found that "mandated-benefit laws are state regulation of the 'business of insurance'" within the meaning of the McCarran-Ferguson Act and thus are a legitimate means for state legislation. — U.S. at ——, 105 S.Ct. at 2390.

Applying the Supreme Court's reasoning to the case at bar, we can only conclude that Act 429, by virtue of ERISA's saving clause, is not pre-empted by ERISA. Like the Massachusetts statute, Act 429 is a mandated-benefit law, and as such is saved from federal pre-emption by ERISA's saving clause. *Metropolitan Life Insurance Company v. Massachusetts*, — U.S. at ——, 105 S.Ct. at 2392. We hold therefore that Act 429 is not preempted by ERISA. The "stop-loss" nature of the plans does not alter our conclusion. As the Supreme Court recognized, the *Metropolitan Life* decision "results in a distinction between

5. Because Justice Powell did not take part in the decision, the vote was 8–0.

insured and uninsured plans, leaving the former open to indirect regulation while the latter are not." *Id.* According to the Complaint's description of the plans, the plans include an arrangement whereby the plans pay premiums to Occidental to insure that Occidental will pay all benefits in excess of the claims liability limit under the group policies. As long as the plans purchase insurance from "an insurer offering health insurance policies in" Michigan, the policies must include the substance abuse coverage specified by Act 429.

### III.

■ We now turn to the second major issue on appeal. In granting the plaintiffs' motion for summary judgment, the district court stated in a footnote that an alternative basis for invalidating Act 429 was that, in the district court's view, Act 429 was pre-empted by the NLRA, 29 U.S.C. § 151 *et seq.* We hold that, on the contrary, Act 429 is not pre-empted by the NLRA.

Whether mandated-benefit laws deprive parties of the right to negotiate freely the terms of their collective bargaining agreement and thus are pre-empted by the NLRA was also determined by the Supreme Court in *Metropolitan Life Insurance Company v. Massachusetts*, — U.S. ——, 105 S.Ct. 2380, 85 L.Ed.2d 728 (1985). The Court recognized that unionized workers and employers are subject to minimum labor standards imposed by both federal and state law. *Id.* at ——, 105 S.Ct. at 2396.

> [These m]inimum state labor standards affect union and non-union employees equally, and neither encourage nor discourage the collective-bargaining processes that are the subject of the NLRA. Nor do they have any but the most indirect effect on the right of self-organization established in the Act. Unlike the NLRA, mandated-benefit laws are not designed to encourage or discourage employees in the promotion of their interests collectively; rather, they are in part "designed to give specific minimum protections to *individual* workers and to

ensure that *each* employee covered by the Act would receive" the mandated health insurance coverage.

*Id.* (quoting *Barrentine v. Arkansas Best-Freight System, Inc.*, 450 U.S. 728, 739, 101 S.Ct. 1437, 1444, 67 L.Ed.2d 641 (1981)) (emphasis in original). Furthermore, the NLRA's legislative history does not suggest:

> that Congress intended to disturb the myriad state laws then in existence that set minimum standards, but were unrelated in any way to the processes of bargaining or self-organization. To the contrary, ... Congress developed the framework for self-organization and collective bargaining of the NLRA within the larger body of state law promoting public health and safety.

*Id.* at ——, 105 S.Ct. at 2398. Because the purpose of Massachusetts' mandated-benefit law was to implement the Commonwealth's policy of providing mental health care to its residents, the Court found the law was a "valid and unexceptional exercise" of Massachusetts' police power. *Id.* at ——, 105 S.Ct. at 2399. The Court concluded that Massachusetts' mandated-benefit law, "like many laws affecting terms of employment, potentially limits an employee's right to choose one thing by requiring that he be provided with something else, it does not limit the rights of self-organization or collective bargaining protected by the NLRA, and is not pre-empted by that Act." *Id.*

Michigan's Act 429, like Massachusetts' mandated-benefit law, evolved out of the state's concern for the welfare of its citizens. Like the Massachusetts law, Act 429 "does not limit the rights of self-organization or collective bargaining protected by the NLRA," *id.* Therefore, on the authority of *Metropolitan Life Insurance Company v. Massachusetts*, we hold that Act 429 is not pre-empted by the NLRA.

### IV.

In conclusion, we hold that Michigan's Act 429 is not pre-empted by either ERISA or the NLRA. Consequently, we reverse

the district court's grant of the plaintiffs' motion for summary judgment and remand the cause to the district court for further proceedings consistent with this opinion.