Robert **CUTTLE** By and Through Gisele **STICKNEY**, Guardian and Conservator, Plaintiff,

v.

**FEDERAL EMPLOYEES METAL TRADES COUNCIL, Defendant.**

**Civ. No. 85–0019 P.**

United States District Court, D. Maine.

Dec. 16, 1985.

Michael Ayotte, Saco, Me., John C. Gall, Preti, Flaherty & Beliveau, Portland, Me., for plaintiff.

James G. Noucas, Jr., Mulvey & Noucas, Portsmouth, N.H., for defendant.

## ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

GENE CARTER, District Judge.

Plaintiff was employed at the Portsmouth Naval Shipyard until September 29, 1982. While so employed, he was a participant in the Metal Trades Council Health Benefit Plan established by defendant Federal Employees Metal Trades Council. Premiums for coverage in the plan were deducted from plaintiff's pay and were paid for the period ending October 2, 1982. The Plan provided that "[a] covered member's coverage will terminate on the earliest of the following dates: ... (b) upon termination of active service...." Exhibit B to Defendant's Motion at 4. Plaintiff was injured in a motorcycle accident on October 21, 1982. He submitted a proof of loss claim to the Metal Trades Council. The claim was denied on August 23, 1983.

Plaintiff alleges that under both Maine and New Hampshire law, he was entitled to conversion insurance coverage in the period following his termination from employment. He alleges that defendant violated both Maine and New Hampshire law and in so doing also violated the Employee Retirement Income Security Act, 29 U.S.C. § 1001 *et seq.* (ERISA).

Defendant has moved for summary judgment on the grounds that both provisions of Maine and New Hampshire insurance law cited by plaintiff are preempted by ERISA and that under the terms of the plan, plaintiff's insurance coverage ended with his termination. Plaintiff failed to respond to defendant's notice within ten days as required by Local Rule 19(c).[1] In a summary judgment context, the Court does not automatically grant the motion for lack of objection as it does in other motion practice, *see, e.g., Picucci v. Town of Kittery,* 101 F.R.D. 767 (D.Me.1984), but instead utilizes the following procedure:

---

1. On November 26, 1985, twelve days after response to the motion for summary judgment was due, plaintiff's new co-counsel filed a motion for extension of time in which to file a response. The motion stated as grounds for the relief sought that co-counsel had just entered his appearance on that day and he needed adequate time to oppose the motion adequately. Fed.R. Civ.P. 6(b) provides that the Court may, "upon motion made after the expiration of the specified period permit the act to be done where the failure to act was the result of excusable neglect." No showing of excusable neglect has been made here. In fact, no reason at all has been given for the failure to file. Co-counsel merely stated that he has recently filed his appearance and needs more time to prepare. Submissions in the file show that plaintiff was represented by the other co-counsel past the required filing date, yet no excuse for his dilatory conduct is provided. The Court must, therefore, deny plaintiff's motion for enlargement of time.

[W]ith summary judgment motions ... an opposing party who fails to object within ten days is to be deemed to have waived his right to controvert facts asserted by the moving party. The Court will accept as true all material facts, supported by appropriate record citations, set forth by the movant. Summary judgment will be granted if upon the Court's consideration of the pertinent papers, those facts entitle the moving party to judgment as a matter of law.

*McDermott v. Lehman,* 594 F.Supp. 1315 (D.Me.1984).

In support of its motion, defendant has submitted copies of the plan Trust Agreement, a copy of the Health Benefits Plan, and a copy of the contract between the plan and the plan administrator. It has also submitted the affidavit of Bruce Buchanan, an agent of the plan administrator. These documents show that the plan is self-funded, *i.e.,* that benefits of the plan are paid directly from the monthly contributions collected from the covered members of the plan. Although the plan is not initially funded by an insurance policy, the plan does carry specific aggregate excess insurance or stop-loss insurance. This policy pays the plan for sums paid by the plan in excess of $20,000 per individual claimant, protecting the plan against excessive loss. A copy of this policy was also submitted in support of defendant's motion.

## DISCUSSION

■ New Hampshire law provides that group accident and health insurance benefits shall be extended to any beneficiary who becomes ineligible for continued participation in a plan for a period of 39 weeks beyond the ordinary termination of the plan. N.H.R.S.A. 415:18 VII(g). *See Dawson v. Whaland,* 529 F.Supp. 626 (D.N.H. 1982). Subsection (g)(3) makes the provision applicable to employee benefit plans. Maine has a similar provision, applicable to group health insurance policies. 24–A M.R.S.A. § 2809–A. Plaintiff in his complaint has alleged that defendant has violated both these statutes by terminating his insurance. Defendant argues in his motion for summary judgment that both statutes have been preempted by ERISA. The Court agrees.

Section 1144 of Title 29 U.S.C. provides that:

Except as provided in subsection (b) of this section, the provisions of this subchapter and subchapter III of this chapter shall supersede any and all State laws insofar as they may now or hereafter relate to any employee benefit plan described in section 1003(a) of this title and not exempt under section 1003(b) of this title....

In examining subsection (b) of section 1144, exception 2 is pertinent:

(2)(A) Except as provided in subparagraph (B), nothing in this subchapter shall be construed to exempt or relieve any person from any law of any State which regulates insurance, banking or securities.

Both of the laws cited by plaintiff are state laws regulating insurance. This insurance savings clause, however, is modified by the so-called "deemer clause" which provides:

Neither an employee benefit plan described in section 1003(a) of this title, which is not exempt under section 1003(b) of this title (other than a plan established primarily for the purpose of providing death benefits), nor any trust established under such a plan, shall be deemed to be an insurance company or other insurer, bank, trust company, or investment company or to be engaged in the business of insurance or banking for purposes of any law of any State purporting to regulate insurance companies, insurance contracts, banks, trust companies or investment companies.

29 U.S.C. § 1144(b)(2)(B).

In a thoughtful discussion of section 1144, a federal district court in California stated: "The rule that emerges from these cases is that any law directly regulating an employee benefit plan is preempted, but laws regulating an insurance company or policy purchased from an insurance company are saved from preemption." *Eversole*

*v. Metropolitan Life Insurance Co., Inc.,* 500 F.Supp. 1162, 1170 (C.D.Cal.1980). The *Eversole* construction was recently reaffirmed by the United States Supreme Court in *Metropolitan Life Insurance Co. v. Massachusetts,* —— U.S. ——, 105 S.Ct. 2380, 85 L.Ed.2d 728 (1985). In that case, the Court construed the insurance saving and deemer clauses holding that Massachusetts' mandated benefit law was not preempted by ERISA and applied to insurance policies purchased by benefit plans or employers or unions in Massachusetts. The Court stated:

> We are aware that our decision results in a distinction between insured and uninsured plans, leaving the former open to indirect regulation while the latter are not. By so doing we merely give life to a distinction created by Congress in the "deemer clause."

*Id.* —— U.S. at ——, 105 S.Ct. at 2393, 85 L.Ed.2d at 745.

In the instant case, plaintiff seeks to have the New Hampshire and Maine conversion laws applied directly to an employee benefit plan. The District Court for the District of New Hampshire has already determined that the New Hampshire conversion statute may not be applied to plans like the instant one which are self-insured and carry stop-loss insurance. *Dawson v. Whaland,* 529 F.Supp. 626, 632 (D.N.H. 1982):

> We here deal not with the conduct of group insurance coverage, which the Court easily concedes falls within the primacy of state regulation of insurance, pursuant to the McCarran Ferguson Act.... What the instant state legislation seeks to do is to determine who shall be eligible under such funds, which the Court finds and rules have "emerge[d] from collective bargaining ... and which, the Court also finds and rules, the state may not do.

Although the record here does not make clear whether the instant plan is the result of collective bargaining, the Court finds enough similarity between this case and *Dawson* to warrant application of the rule

of that case. Despite the fact that the plans in that case and this carry stop-loss insurance, they are still primarily self-funded and should not be deemed regulable insurance companies. *Id.* at 630. *See also General Split Corp. v. Mitchell,* 523 F.Supp. 427 (E.D.Wis.1981). Stop-loss insurance is not group health insurance providing insurance to individuals through a sponsor group. Rather, it is insurance obtained to protect self-insurers from risks beyond those upon which the premiums are based.

Plaintiff also has alleged that the Maine conversion statute should be applied to the benefit plan. The Maine statute cited by plaintiff, 24–A M.R.S.A. § 2809–A, provides for conversion benefits for group health insurance policies. For the statute to apply to the instant benefit plan which provides health insurance benefits as a group health insurance policy might, the plan would have to be "deemed" an insurance company in violation of the "deemer clause" of ERISA. 29 U.S.C. § 1144(b)(2)(B).

Neither can the statute be applied to the plan because it carries the stop-loss insurance. That policy is not a group health insurance policy within the meaning of the applicable statutes. 24–A M.R.S.A. §§ 2804–2806. All of those statutes specify that a group policy must be established to insure employees for the benefit of persons other than the union or trustee or employer which has obtained the group policy. The stop-loss policy insures the issuer of the plan for the benefit of the fund or plan. Payment is not made to the individual employees for the claims they make. Such insurance is, of course, indirectly of benefit to the covered employees. The Court finds, however, that the statute intends direct benefits. It appears, therefore, that the conversion requirements under Maine law cannot be applied to the subject benefit plan.

Both the Maine and New Hampshire conversion statutes are preempted by ERISA to the extent that they might be construed to apply to employee benefit plans like the

one at issue here. Since the basis of plaintiff's claims is that defendant has violated the New Hampshire and Maine statutes, defendant is entitled to judgment as a matter of law.

Accordingly, it is ORDERED that defendant's motion for summary judgment is hereby GRANTED. .