**AUTO CLUB INSURANCE ASSOCIATION,**
Plaintiff,

v.

**SAFECO LIFE INSURANCE COMPANY, Defendant.**

No. 1:92–CV–170.

United States District Court,
W.D. Michigan, S.D.

April 9, 1993.

David J. Lanctot, Brandt, Hanlon, Becker, Lanctot, McCutchen, Schoolmaster & Taylor, Detroit, MI, for plaintiff.

Stephen Wasinger, Michael R. Shpiece, Honigman, Miller, Schwartz & Cohn, Detroit, MI, for defendant.

## OPINION

ROBERT HOLMES BELL, District Judge.

Plaintiff Auto Club Insurance Association ("ACIA"), as subrogee of Alice Guetzka, filed this action against Defendant SAFECO Life Insurance Company ("SAFECO"), for a determination of which insurance company has ultimate liability for the payment of Guetzka's medical expenses. The matter is before the Court on cross-motions for summary judgment.[1]

### I.

The material facts are not in dispute. On June 9, 1985, Alice Guetzka was seriously injured as a result of an automobile accident. At the time of the accident, Guetzka had no-fault automobile insurance coverage through ACIA. The policy contained a coordination of benefits provision which purports to make it secondary to other health coverage on Guetzka. At the same time, Guetzka's husband was a participant in the Pentwater Wire Products, Inc. Self–Funded Employee Health Benefit Plan (the "Plan"). The Court will assume, for purposes of this motion, that Alice Guetzka was a beneficiary of the Plan.[2] The Plan also contained a coordination of benefits provision.

Pentwater Products, the Plan sponsor, had an excess loss insurance policy from SAFECO with a $14,000 individual deductible. The SAFECO policy reimburses a participating employer such as Pentwater Products for the

---

1. Although SAFECO did not file a written motion for summary judgment, in its written response to Plaintiff's motion it requested judgment in its favor. At oral argument on January 12, 1993, counsel for both parties agreed that the Court could treat the submissions as cross-motions for summary judgment.

2. Alice Guetzka's husband was an employee of Pentwater Wire Products, Inc. Because Alice Guetzka was separated from her husband at the time of the accident there is a factual issue as to whether or not she was entitled to benefits from the Plan. In order to bring the issue into focus the Court will assume, for purposes of this motion, that she was a beneficiary of the Plan.

amount of covered expenses above a certain deductible that the employer has paid for persons covered under the applicable employee health plan.

ACIA paid medical expenses of over $350,000 incurred by Guetzka as a result of the June 9, 1985 automobile accident. In June 1986, ACIA, as subrogee of Guetzka, sued the Plan in Oceana County Circuit Court for reimbursement. ACIA claimed the Plan had primary liability for Guetzka's medical expenses because benefits available under the Plan constitute "other health and accident coverage" within the meaning of section 3109a of the Michigan No–Fault Law, M.C.L.A. § 500.3109a; M.S.A. § 24.13109(1). *Auto Club Ins. Assn. v. Pentwater Wire Products, Inc. Self–Funded Employee Health Benefit Plan*, Oceana Circuit Court No. 86–2900–CK. The Plan removed the case to the United States District Court for the Western District of Michigan where it was stayed pending resolution of *Northern Group Services, Inc. v. Auto Owners Ins. Co.*, 833 F.2d 85 (6th Cir.1987), *cert. denied*, 486 U.S. 1017, 108 S.Ct. 1754, 100 L.Ed.2d 216 (1988). After a final decision in *Northern Group Services* the case was remanded to Oceana County and judgment was entered for ACIA. The Plan appealed the judgment. On January 6, 1992, the Michigan Court of Appeals, relying on *Auto Club Insurance Assn. v. Frederick and Herrud, Inc.*, 191 Mich.App. 471, 479 N.W.2d 18 (1991), reversed the judgment for the reason that state regulation of self-funded employee benefit plans was preempted by the Employee Retirement Income Security Act of 1974 (ERISA). Accordingly, the court entered judgment in favor of the Plan. ACIA has appealed this decision, and that appeal is pending.

On February 3, 1992, ACIA filed the current lawsuit in Oceana County Circuit Court, this time against SAFECO, the stop-loss insurance carrier for Pentwater Products. ACIA claims that SAFECO is responsible for the payment of primary benefits for Guetzka above the $14,000 individual deductible and that it is accordingly liable to ACIA, as subrogee of Guetzka, for approximately $325,000. ACIA claims that state law should control this issue.

SAFECO removed the case to this Court, alleging both federal question and diversity jurisdiction. SAFECO denies liability.

## II.

ACIA recognizes that under recent authorities, ERISA preempts any state law claims Guetzka and ACIA, as her subrogee, have against the Plan. However, ACIA claims that pursuant to ERISA's saving clause, § 514(b)(2)(A) [3], and *Metropolitan Life Ins. Co. v. Massachusetts*, 471 U.S. 724, 105 S.Ct. 2380, 85 L.Ed.2d 728 (1985), it still has a viable state law claim against SAFECO, an insurance company regulated by state law.

ACIA's complaint must be dismissed for three independent and equally viable reasons.

## A.

Perhaps the most obvious reason why ACIA's claim must fail is that, apart from issues under either no-fault law or ERISA, neither Guetzka nor ACIA has a contractual claim against SAFECO.

The parties have stipulated in their Joint Status Report that because this action is brought by ACIA as subrogee of Alice Guetzka, ACIA's rights against SAFECO are limited to any rights Guetzka has against SAFECO.

ACIA's contention that Guetzka has a claim against SAFECO is based upon a fatal preliminary assumption that SAFECO was the Plan's stop loss carrier. This assumption is contradicted by the undisputed evidence of record. Pentwater Products, not the Plan, is the insured under the SAFECO policy.

ACIA recognizes as much in paragraph 15 of its complaint.[4] Nevertheless, throughout

---

3. 29 U.S.C. § 1144(b)(2)(A) provides that with one exception, nothing in ERISA "shall be construed to exempt or relieve any person from the law of any State which regulates insurance, banking, or securities."

4. Paragraph 15 of the complaint provides: "That Safeco Life Insurance Company provided excess loss insurance for the Pentwater Wire Products, Inc., Self–Funded Employee Health Benefit Plan

its pleadings ACIA clouds the issue by referring to "the stop-loss carrier" or "a stop-loss carrier", without defining whose stop-loss carrier it is referring to. The problems caused by ACIA's imprecise wording is apparent in the question presented by ACIA in its brief in support motion for summary judgment:

> Does state law apply in resolving the conflict in coordination of benefits provisions between a stop-loss carrier for an ERISA plan and a no-fault carrier?

The question does not address the issue in this case because the SAFECO policy is not a stop-loss carrier for the ERISA plan. It insures the employer, the Plan sponsor. The SAFECO Policy, attached as Exhibit to ACIA's brief in support of motion for summary judgment, provides in relevant part:

> We will reimburse you for a percentage of the amount of covered expenses you have paid for covered persons under your plan.

"You" is defined as each participating employer. "Plan" is defined as the employee benefit plan the participating employer has adopted in writing to provide benefits to its employees.

In its complaint ACIA admits that the insured under the SAFECO policy is Pentwater Products. ACIA stipulated in the joint status report that the Plan is not a party to any insurance contracts, that the SAFECO policy insures *employers*, and that the SAFECO policy reimburses *employers* for the amount of covered expenses in excess of the deductible that the employer has *paid* for persons covered under the applicable ERISA plan.[5] ACIA admits that if the Plan had paid Guetzka, SAFECO would have reimbursed Pentwater, the employer, and not

the plan. *See Plaintiff's Reply to Defendant's Response to Plaintiff's Motion for Summary Judgment* at 2.

ACIA's reliance on *Metropolitan* is misplaced. In *Metropolitan*, the Supreme Court held that plans which purchase insurance can be indirectly regulated by mandated-benefit laws under state law because ERISA does not prevent those laws from being applied to the insurance policies which plans purchase. 471 U.S. at 747 & n. 25, 105 S.Ct. at 2393 & n. 25. The insurance policies at issue in *Metropolitan* were group-health policies purchased by the plans for the plan participants.

Unlike the situation in *Metropolitan*, the insurance contract at issue in this case was not purchased by the Plan. Moreover, stop-loss insurance was not at issue in *Metropolitan*, and certainly not a stop-loss policy purchased by an entity other than the Plan.

Despite the clear language of the policy, ACIA contends that naming the employer as opposed to the Plan as the insured is a technical difference without distinction.

ACIA contends that the SAFECO policy is in effect the Plan's stop-loss policy because the SAFECO policy incorporates by reference the employee benefit plan and reimburses the employer for claims paid under the Plan. Accordingly, ACIA argues, the SAFECO Policy is an asset of the Plan, and Guetzka is a third party beneficiary of the SAFECO policy.

The Court will not so casually blur the difference between the employer and the Plan. They are legally distinct entities. The SAFECO policy's incorporation of the Plan is the method by which SAFECO determines its duty to reimburse the employer. Incor-

---

by technically having Pentwater Wire Products, Inc. as the insured."

**5.** The Parties' May 8, 1992 Joint Status Report provides in relevant part under ¶ A(1) Stipulations:

> d. Plan benefits are paid by the Plan. The Plan is funded through contributions made by Pentwater and (perhaps) its employees. The Plan itself is not a party to any insurance contracts.
>
> e. Pentwater is a party to an excess loss insurance arrangement. Specifically, Pentwater participated in the SAFECO/Excess Loss Insur-

ance Trust. The Trust is domiciled in Washington. Safeco Life Insurance Company ("Safeco") has issued an excess loss insurance policy (the "Safeco Policy") to the Trust.

> f. *The Safeco Policy insures employers* participating in the Trust against certain liabilities. Specifically, the Safeco Policy provides that Safeco will "reimburse" a participating employer (such as Pentwater) for the amount of covered expenses (in excess of a deductible which was $14,000 in 1985 and $20,000 in 1986) that the employer has paid for persons covered under the applicable plan.

poration of the Plan language does not put SAFECO in the same position as the Plan vis-a-vis the Plan beneficiaries.

The employer's stop-loss policy is not an asset of the Plan. SAFECO has provided the Court with an advisory opinion issued by the Department of Labor ("DOL"). In this advisory opinion the DOL concluded that on the facts provided, a stop-loss policy purchased by the employer sponsoring a welfare benefit plan that provides benefits exclusively out of the employer's general assets is not an asset of the Plan. DOL Advisory Opinion 92–02A (Jan. 17, 1992). Although the benefits under the plan would be secured by the general assets of the employer, "the sponsor's general assets do not become plan assets solely as a result of the employer's promise to pay benefits." *Id.*

■ Under ERISA Procedure 76–1, § 10, advisory opinions apply only to the situation described therein, and may be relied on only by the parties described in the request for opinion. Nevertheless, while advisory opinions are not binding on the court, "[c]onsiderable weight should be accorded to an executive department's construction of a statutory scheme it is entrusted to administer, and the principle of deference to administrative interpretations has been consistently followed by this Court." *Chevron, U.S.A. Inc. v. Natural Resources Defense Council, Inc.,* 467 U.S. 837, 844, 104 S.Ct. 2778, 2782, 81 L.Ed.2d 694 (1984) (quoting *United States v. Shimer,* 367 U.S. 374, 382, 81 S.Ct. 1554, 1560, 6 L.Ed.2d 908 (1961)). Because the Secretary of Labor is charged with primary responsibility for administering the fiduciary responsibility provisions of ERISA, his interpretation of this statute must be accorded considerable deference. *Holcomb v. United Automotive Assoc.,* 658 F.Supp. 84, 86 (E.D.Mo.1987), *aff'd,* 852 F.2d 330 (8th Cir.1988). *See also Baum v. Madigan,* 979 F.2d 438, 443 (6th Cir.1992).

■ The Court agrees that the SAFECO stop-loss policy is not an asset of the Plan.

Finally, by its terms, payment under the SAFECO policy is not triggered unless the employer has paid expenses for covered persons under the Plan. There is no dispute that the employer has not paid Guetzka's claim, and accordingly, SAFECO has no liability to the employer, much less to Guetzka.

There being no contractual basis for holding SAFECO liable to Guetzka, ACIA's subrogation action against SAFECO must fail.

## B.

An additional basis for dismissing ACIA's claim is that the stop-loss policy is not a policy for health benefits within the purview of 3109a.

■ ACIA premises SAFECO's liability on § 3109a of the Michigan no-fault law. M.C.L. § 500.3109a; M.S.A. § 24.13109(1).[6] Under Michigan law, in the event there is a conflict between the coordination of benefits provisions in a no-fault policy and a health insurance policy, the health insurance policy is primarily responsible for medical benefits payable to the insured. *Federal Kemper Ins. Co. v. Health Ins. Admin. Inc.,* 424 Mich. 537, 546, 383 N.W.2d 590 (1986).

■ ACIA contends that because the SAFECO policy incorporates by reference the Pentwater Plan, which is fashioned along the lines of a health insurance policy, it is itself a health insurance policy and is subject to regulation by Michigan insurance laws, specifically, § 3109a of the no-fault act.

ACIA's position is not supported by case law. Michigan courts have generally limited § 3109a to "benefits typically associated with health insurance plans." *Rettig v. Hastings Mutual Ins. Co.,* 196 Mich.App. 329, 333, 492 N.W.2d 526 (1992). Section 3109a of the no-fault act is designed to encourage coordination of personal protection insurance benefits with "overlapping health and accident coverage that protects *the same insured* under a separate insurance contract." *Auto Club Ins. Assn. v. New York Life Ins. Co.,* 440

---

**6.** This section provides in relevant part:
   An insurer providing personal protection insurance benefits shall offer, at appropriately reduced premium rates, deductibles and exclusions reasonably related to other health and accident coverage on the insured.

Mich. 126, 131, 485 N.W.2d 695 (1992) (emphasis added).

The Court is aware of no case construing "health and accident coverage" under 3109a to include a stop-loss insurance policy.

The difference between stop-loss and health insurance is well-recognized. In *FMC Corp. v. Holliday*, 498 U.S. 52, 64, 111 S.Ct. 403, 411, 112 L.Ed.2d 356, 368 (1990), the Supreme Court held that "if a plan is insured, a State may regulate it indirectly through regulation of its insurer and its insurer's insurance contracts." The Sixth Circuit has determined, however, that a Plan's purchase of stop-loss insurance does not make it an insured Plan. *Lincoln Mut. Casualty Co. v. Lectron Products, Inc. Employee Health Ben. Plan*, 970 F.2d 206, 210 (6th Cir.1992). *See also Auto Club Ins. Assn. v. Frederick & Herrud, Inc.*, 191 Mich.App. at 475, 479 N.W.2d 18.

The rationale for not treating stop-loss insurance as health insurance is better explained by cases from other circuits. In *Thompson v. Talquin Building Products Co.*, 928 F.2d 649 (4th Cir.1991), the court held that a stop-loss insurance policy purchased by the Plan was not accident and health insurance for the employees.

> We agree with the district court that stop-loss insurance does not convert Talquin's self-funded employee benefit plan into an insured plan. Even with the stop-loss coverage, Talquin's Plan is directly liable to Talquin's employees for any amount of benefits owed to them under the Plan's provisions. The purpose of the stop-loss insurance is to protect Talquin from catastrophic losses, it is not accident and health insurance for employees. Instead of covering employees directly, the stop-loss insurance covers the Plan itself. Thus, for purposes of ERISA, the Plan remains self-funded even with the stop-loss insurance.

*Id.* at 653.

The same conclusion was reached in *Brown v. Granatelli*, 897 F.2d 1351, 1354 (5th Cir.1990), *cert. denied*, 498 U.S. 848, 111 S.Ct. 137, 112 L.Ed.2d 104 (1990), *United Food & Commercial Workers & Employers*

*Arizona Health & Welfare Trust v. Pacyga*, 801 F.2d 1157, 1161 (9th Cir.1986), and *Cuttle v. Federal Employees Metal Trades Council*, 623 F.Supp. 1154, 1157 (D.Me.1985).

> The stop-loss insurance does not pay benefits directly to participants, nor does the insurance company take over administration of the Plan at the point when the aggregate amount is reached. Thus, no insurance is provided to the participants, and the Plan should properly be termed a non-insured plan, protected by the deemer clause and preemptive of the Arizona anti-subrogation law.

*Pacyga*, 801 F.2d at 1161–62. Similarly, in *Cuttle* the court stated:

> Stop-loss insurance is not group health insurance providing insurance to individuals through a sponsor group. Rather, it is insurance obtained to protect self-insurers from risks beyond those upon which the premiums are based.

623 F.Supp. at 1157.

*Talquin, Brown, Pacyga* and *Cuttle* involved stop-loss insurance purchased by the Plans themselves. In each case the court held that the stop-loss policies were not health insurance and were therefore beyond the reach of state statutes regulating health insurance.

In the case before this Court the SAFECO stop-loss policy at issue is one step further removed. It was purchased not by the Plan, but by the employer, and is designed to reimburse the employer, not the Plan or Plan participants. If a stop-loss policy purchased by the Plan is not health insurance, then certainly the stop-loss policy purchased by the employer in this case is not health insurance.

The only law ACIA has come forward with on this issue is *Michigan United Food & Commercial Workers Unions v. Baerwaldt*, 767 F.2d 308 (6th Cir.1985), *cert. denied*, 474 U.S. 1059, 106 S.Ct. 801, 88 L.Ed.2d 777 (1986). In *Baerwaldt* the Sixth Circuit held that as long as an ERISA Plan purchased insurance from "an insurer offering health insurance policies in" Michigan, the policies must include substance abuse coverage in accordance with a Michigan mandated-bene-

fit law. *Id.* at 313. Because the insurance policy at issue in *Baerwaldt* was a stop-loss policy, ACIA claims that in effect the court held that the stop-loss policy was accident and health coverage.

This Court does not find ACIA's argument persuasive. ACIA acknowledges that *Baerwaldt* has been overruled by *FMC Corp.*, at least to the extent that it dealt with the issue of ERISA preemption. Moreover, to the extent *Baerwaldt* can be read to hold that stop-loss coverage is accident and health coverage, it appears to have been overruled by *Lincoln Mut.*, 970 F.2d at 210.

ACIA's claim that SAFECO is primarily liable for Guetzka's medical costs pursuant to § 3109a must fail because the SAFECO policy is not health or accident coverage on the insured.

## C.

■ A third and equally compelling reason for denying ACIA's claim is that ACIA's state law claim against the ERISA Plan's sponsor's stop-loss insurer for benefits due under the Plan is preempted by ERISA.

■ ERISA preempts state law and state law claims that "relate to" any employee benefit plan. 29 U.S.C. § 1144(a); *Fisher v. Combustion Engineering, Inc.*, 976 F.2d 293, 296 (6th Cir.1992). This preemption provision is broadly construed and extends to common law tort and contract actions. *Pilot Life Ins. Co. v. Dedeaux*, 481 U.S. 41, 48, 107 S.Ct. 1549, 1553, 95 L.Ed.2d 39 (1987); *Gibson v. Prudential Ins. Co.*, 915 F.2d 414, 416 (9th Cir.1990).

■ Section 502(a) of ERISA contains a civil enforcement provision that is the *exclusive* remedy for rights guaranteed by ERISA. *Pilot Life*, 481 U.S. at 54, 107 S.Ct. at 1556.

> ERISA will not preempt state law claims based on wrongs for which ERISA provides no remedy. However, where rights are guaranteed by ERISA, the remedy for such rights under ERISA is exclusive. Moreover, Congress constructed ERISA so that the statute will preempt most state law claims.

*International Resources, Inc. v. New York Life Ins. Co.*, 950 F.2d 294, 298 (6th Cir.1991) (citations omitted).

■ The relief sought in this action, the recovery of benefits due under the terms of the Plan, is specifically guaranteed in section 502(a)(1)(B). This section provides that an ERISA plan beneficiary may bring a civil action to recover benefits due under the terms of the plan. 29 U.S.C. § 1132(a)(1)(B). The proper defendant in a suit to recover benefits is the Plan. *Gelardi v. Pertec Computer Corp.*, 761 F.2d 1323, 1324 (9th Cir. 1985); *Holland v. Bank of America*, 673 F.Supp. 1511, 1518 (S.D.Cal.1987).

■ ACIA attempts to avoid ERISA preemption by claiming that this action is merely an attempt to enforce state law in connection with a state insurance policy. As such, ACIA claims it does not involve ERISA. ACIA's claim ignores the fact that neither Guetzka nor ACIA would have a relationship or cause of action against SAFECO without the Plan. There can be no real question that this action is directly related to the existence of an ERISA plan. ACIA, as subrogee of Guetzka, seeks payment of benefits due under the Plan. The Plan is a self-insured "employee welfare benefit plan" covered by ERISA. The existence of the Plan is a necessary element to ACIA's claim that SAFECO is liable under Michigan's no-fault law. Neither ACIA nor Guetzka could allege any relationship or cause of action against SAFECO without the Plan.

In *Ingersoll–Rand Co. v. McClendon*, 498 U.S. 133, 111 S.Ct. 478, 112 L.Ed.2d 474 (1990), the plaintiff claimed he was unlawfully discharged to prevent his attainment of benefits under a plan covered by ERISA. The Supreme Court determined that the plaintiff's claim was preempted by ERISA. In order to prevail, the plaintiff would have to plead, and a court would have to find, that an ERISA plan exists and that the employer had a pension-defeating motive in terminating the employment. "Because the court's inquiry must be directed to the plan, this judicially created cause of action 'relates[s] to' an ERISA plan." *Ingersoll–Rand*, 498 U.S. at 140, 111 S.Ct. at 483, 112 L.Ed.2d at 485. Since there was no cause of action if

there was no plan, the Court determined that the cause of action was preempted by ERISA § 514(a). *Id.* at 141, 111 S.Ct. at 484, 112 L.Ed.2d at 485.

The Sixth Circuit applied a similar analysis in *Fisher.* The plaintiff filed an action against his employee benefit plan for pension benefits and against his employer for state law breach of contract and estoppel claims. The Sixth Circuit affirmed the district court's dismissal of the claims against the employer because those claims were, in essence, "for the recovery of an ERISA plan benefit." 976 F.2d at 297.

Here, as in *Ingersoll–Rand,* the existence of a pension plan is "a critical factor" in establishing liability. 498 U.S. at 139, 111 S.Ct. at 483, 112 L.Ed.2d at 484. ACIA's action is, like the action against the employer in *Fisher,* in essence an action for recovery of an ERISA plan benefit. ACIA's Complaint makes specific reference to and is premised on the existence of the ERISA Plan and upon Guetzka's entitlement to benefits under the Plan.[7] In order to resolve the issues in the case the Court's inquiry would have to be directed to the terms of the Plan.

ACIA's action against SAFECO clearly arises out of and relates to an ERISA plan. Since ERISA provides a specific remedy for recovery of benefits due under the Plan this action is preempted by ERISA.

### III.

For all the foregoing reasons, SAFECO does not have an obligation to reimburse ACIA for the expenses ACIA incurred on behalf of Alice Guetzka. Accordingly, ACIA's motion for summary judgment must be denied, and SAFECO's motion for summary judgment must be granted.

An order and judgment consistent with this opinion will be entered.

---

**7.** Paragraph 7 provides in part: "Alice Guetzka was entitled to benefits from the Pentwater Wire Products, Inc., Self–Funded Employee Health Benefit Plan ..." Paragraph 15 provides "That Safeco Life Insurance Company provided excess loss insurance for the Pentwater Wire Products, Inc., Self–Funded Employee Health Benefit Plan by technically having Pentwater Wire Products, Inc. as the insured."