897 F.2d 1351
 58 USLW 2646, 12 Employee Benefits Ca 1241
 Judy C. BROWN and Lewis F. Brown, Individually and a/n/f of
Reider P.M. Brown, A Minor, and Reise G.L. Brown,
A Minor, Deceased, Plaintiffs-Appellants,
v.
Andy GRANATELLI, As Trustee of Tuneup Masters, Inc. Employee
Benefit Plan; The Tuneup Masters, Inc. Employee
Benefit Plan, and North American Life
and Casualty Company,
Defendants-Appellees.
 No. 89-2171.
 United States Court of Appeals,
Fifth Circuit.
 April 11, 1990.
 
 Ira Watrous, Houston, Tex., for plaintiffs-appellants.
 Gary B. Lawson, Maxweil, Godwin & Carlton, David L. Patterson, Dallas, Tex., Terry Price, Constangy, Brooks & Smith, Naomi S. Ostfeld, James J. McConn, Jr., Hays, McConn, Price & Pickering, Susan C. Stevenson, Houston, Tex., for defendants-appellees.
 Appeal from the United States District Court for the Southern District of Texas.
 Before BROWN, REAVLEY, and HIGGINBOTHAM, Circuit Judges.
 PATRICK E. HIGGINBOTHAM, Circuit Judge:
 
 
 1
 The Browns appeal the district court's grant of summary judgment in favor of Tuneup Masters Employee Benefit Plan, Andy Granatelli, the Plan's trustee, and North American Life and Casualty Company which upheld the denial of benefits under the Plan for two of the Browns' children who were born premature with congenital defects. The district court found that the Employee Retirement Income Security Act of 1974 preempted the application of Tex.Ins.Code Ann. art. 3.70-2(E) to the Plan, Granatelli, or NALAC. Article 3.70-2(E) requires individual and group health insurance policies to provide coverage for newborn babies with congenital defects. The district court also found that the Plan was not structurally defective. We affirm the district court's grant of summary judgment in favor of the Plan, Granatelli, and NALAC.
 
 
 2
 * The Plan is a group medical plan providing certain health care benefits for employees of Tuneup Masters and their eligible dependents. The Plan has been maintained by Tuneup Masters since 1980 as an employee welfare benefit plan within the meaning of ERISA. First Fund Insurance Administrators administers the plan and is solely responsible for processing and paying the claims of Tuneup Masters' employees and their dependents. Tuneup Masters funds the Plan for all covered employees. The employee pays for the cost of his dependents if dependent coverage is elected.
 
 
 3
 Mr. Granatelli, as the owner of Tuneup Masters, purchased excess or "stop-loss" insurance from NALAC. Under the policy NALAC reimburses the Plan for claims the Plan pays which exceed $30,000 for any covered individual during the policy year. From the end of 1983 through 1988 only four individuals out of an average of over 800 individuals covered by the Plan yearly submitted claims in excess of the $30,000 stop-loss coverage attachment point. NALAC has no authority to approve claims or otherwise to manage the plan and no authority to approve changes in the plan itself.
 
 
 4
 In 1985 the Plan was amended in response to the large expense of a premature birth. As amended the Plan excludes coverage for all newborn babies until the 31st day after birth. The Plan also excludes coverage for any baby which on the 31st day is disabled, hospitalized, or sick.
 
 
 5
 The Browns' first child was born in January 1986. The child was premature with related physical problems requiring extensive medical care and treatment. The Browns' second child was born in November 1986, also premature and with birth defects. He remained in the hospital until his death five months later. The Plan refused to pay for the children's treatment because the expenses were incurred during the 30-day waiting period and because the children were not eligible for coverage because of their preexisting disabilities and hospital confinement.
 
 
 6
 The Browns then filed suit in state court against the Plan and Granatelli. The Plan and Granatelli removed the case to federal district court based upon the presence of a federal question and then joined NALAC as a third party defendant.
 
 
 7
 The parties stipulated that there were no genuine issues of material fact and moved for summary judgment. The Browns sought the denied benefits and other damages based upon two theories relevant to this appeal: that Tex.Ins.Code Ann. art. 3.70-2(E) required the Plan and NALAC's policy to cover newborns and that the Plan was structurally defective because it did not. The district court denied the Browns' motion for summary judgment and granted defendants' motion, holding that ERISA preempted Article 3.70-2(E) and that the Plan was not structurally defective.
 
 II
 
 8
 The Browns admit that if Article 3.70-2(E) by its letter applied directly to employee benefit plans, its application would be preempted by ERISA. In Metropolitan Ins. Co. v. Massachusetts, 471 U.S. 724, 105 S.Ct. 2380, 85 L.Ed.2d 728 (1985), the Supreme Court held that mandated-benefit laws directly applicable to employee benefit plans are preempted by ERISA. Id. at 735 n. 14, 747, 105 S.Ct. at 2387 n. 14, 2393. However, according to the Court, plans which purchase insurance can be indirectly regulated by mandated-benefit laws because ERISA does not prevent those laws from being applied to the insurance policies which plans purchase. Id. at 747 & n. 25, 105 S.Ct. at 2393 & n. 25. Although the facts of Metropolitan are distinguishable from the facts of this case--the insurance policies at issue in Metropolitan were group insurance policies purchased by plans for the plan participants and not stop-loss policies--the Browns argue that under Metropolitan Article 3.70-2(E) can be applied to the Plan indirectly through the stop-loss policy it purchased from NALAC. Article 3.70-2(E) cannot require the Plan to provide mandated coverage, and because we conclude that Article 3.70-2(E) does not apply to stop-loss insurance purchased by an employee benefit plan to insure that plan against catastrophic loss, we do not reach the ERISA preemption issues as to stop-loss insurance coverage.
 
 III
 Article 3.70-2(E) requires that
 
 9
 [n]o individual policy or group policy of accident or sickness insurance, ... which provides for accident and sickness coverage of additional newborn children or maternity benefits, may be issued ... if it contains any provision excluding or limiting the initial coverage of a newborn infant for a period of time, or limitations or exclusions for congenital defects of a newborn child.
 
 
 10
 Tex.Ins.Code Ann. art. 3.70-2(E) (Vernon 1981). "Accident and Sickness insurance" is defined broadly as "any policy or contract providing insurance against loss from sickness or from bodily injury or death by accident or both." Tex.Ins.Code Ann. art. 3.70-1(B)(3) (Vernon 1981).
 
 
 11
 NALAC argues that an insurance policy purchased by an employee benefit plan to protect that plan from catastrophic loss is not accident and sickness insurance even though it indirectly covers accident and sickness losses. NALAC argues that Article 3.70-2(E) only applies to insurance purchased for sick or injured individuals. With one important qualification, we agree.
 
 
 12
 Subchapter G of the Texas Insurance Code contains the provisions dealing with accident and sickness insurance. Few if any of these provisions can appropriately be applied to an insurance policy that reimburses an employee benefit plan for catastrophic loss and does not pay sick or injured persons. See Tex.Ins.Code Ann. 3.70-1 to -3 (Vernon 1981 & Supp.1989). The focus of Subchapter G is on protecting sick or injured individuals; Subchapter G has nothing to say about protecting employee benefit plans from catastrophic loss. The statement of purpose in Subchapter G is illustrative. It states:
 
 
 13
 The purpose of this Act shall be to provide for reasonable standardization, readability, and simplification of terms and coverages contained in individual accident and sickness insurance policies; to facilitate public understanding of coverages; to eliminate provisions contained in individual accident and sickness insurance policies which may be unjust, unfair, misleading, or unreasonably confusing in connection with the purchase of such coverages or with settlement of claims; and to provide for full and fair disclosure in the sale of accident and sickness coverages.
 
 
 14
 Tex.Ins.Code Ann. art. 3.70-1 (Vernon 1981). Article 3.70-2(E) fits this statutory scheme, and we decline to apply it to stop-loss insurance purchased by an employee benefit plan to protect itself against catastrophic loss. That is, we are persuaded that under Texas law stop-loss insurance is not accident and sickness insurance. Accord Cuttle v. Federal Employees Metal Trades Council, 623 F.Supp. 1154, 1157 (D.Me.1985) (holding that a stop-loss insurance policy is not group health insurance under Maine law); cf. United Food & Commercial Workers & Employers Arizona Health & Welfare Trust v. Pacyga, 801 F.2d 1157, 1161-62 (9th Cir.1986) (holding that because stop-loss insurance is not health insurance for plan participants, a plan which purchases such insurance is not an insured plan subject to state regulation under Metropolitan ).
 
 
 15
 Article 3.70-2(E) prohibits health and accident insurance policy provisions that exclude or limit the coverage of newborns with congenital defects. The policy issued by NALAC contains no limiting provisions; NALAC reimburses the Plan for all the losses it incurs up to $1,000,000.00 per person in excess of the $30,000.00 per person stop-loss attachment point. The Plan, however, does not incur any losses because of newborns with congenital defects, and the state is preempted by ERISA from requiring the Plan to include those losses. Section 514(a) of ERISA preempts all state laws which "relate to" employee benefit plans. 29 U.S.C. Sec. 1144(a). At the same time, the preemptive effect of Sec. 514(a) is limited by Sec. 514(b)(2)(A), the "insurance savings clause," which states that, with one exception, nothing in ERISA "shall be construed to exempt or relieve any person from any law of any State which regulates insurance, banking, or securities." 29 U.S.C. Sec. 1144(b)(2)(A). The "deemer clause," Sec. 514(b)(2)(B), however, provides that no employee benefit plan "shall be deemed to be an insurance company ... or to be engaged in the business of insurance ... for purposes of any law of any state purporting to regulate insurance companies." 29 U.S.C. Sec. 1144(b)(2)(B). Because of the deemer clause the Plan's payments to beneficiaries cannot be considered insurance payments. Under Metropolitan the mandated benefit law cannot apply to the Plan itself, but only to health and accident insurance it purchases.
 
 
 16
 By adopting words of exclusion to express its purpose the Texas legislature plainly intended that coverage be mandated only when the primary coverage of a policy is for health and accident coverage. Here the primary coverage is for the Plan's catastrophic losses. We find additional support for our decision in the language of Article 3.70-2(E) limiting the statute's application to "individual" or "group" accident and sickness insurance policies. "Individual" policies are purchased by an individual for himself and his family. See Tex.Ins.Code 3.70-2(A)(3) (Vernon 1981). "Group" policies are purchased by an employer or other qualified organization for a group of individuals and their families. See Tex.Ins.Code 3.51-6, sec. 1(a) (Vernon Supp.1989). Read literally, the stop-loss policy purchased by the Plan is not an "individual" or "group" policy since it does not benefit individuals, but the Plan itself.
 
 
 17
 At the same time, we are wary lest an overly literal reading of the statute frustrate an otherwise manifest legislative purpose. We do not suggest that Article 3.70-2(E) can be avoided by naming an employee benefit plan as the insured on a policy which in reality insures the plan participants. If, for example, a plan paid only the first $500 of a beneficiaries' health claim, leaving all else to the insurer, labeling its coverage stop-loss or catastrophic coverage would not mask the reality that it is close to a simple purchase of group accident and sickness coverage. We look beyond form to the substance of the relationship between the plan, the participants, and the insurance carrier to see whether the plan is in fact purchasing insurance for itself and not for the plan participants, recognizing that as insurance is less for catastrophic loss, it is increasingly like accident and sickness insurance for plan participants. In this case the fact that the Plan has only had to call on NALAC to reimburse it for its payments to four individuals in five years supports the Plan's assertion that the insurance is for itself and not for the plan participants. In short, if the Plan were merely a conduit for claims from participants to NALAC we could not reach the same conclusion.
 
 IV
 
 18
 In sum, we hold that Article 3.70-2(E) does not apply to an insurance policy which insures a plan against catastrophic losses. Because all of the Browns' grounds for reversal derive from the failure of the Plan, Granatelli, and NALAC to comply with Article 3.70-2(E), the district court's grant of summary judgment in favor of the Plan, Granatelli, and NALAC is
 
 
 19
 AFFIRMED.
 
 REAVLEY, Circuit Judge, concurring:
 
 20
 I agree with both of my colleagues that Tuneup Masters Employee Benefit Plan "does not incur any losses because of newborns with congenital defects, and the state is preempted by ERISA from requiring the Plan to include those losses." Having decided that matter, the NALAC policy, which only reimburses the Plan for claims paid in excess of $30,000, presents us with no legal questions and the Browns with no benefits. NALAC insures no one for any claim until the Plan has paid a claim in excess of $30,000. The Texas statute does not rewrite the contract between the Plan and NALAC to provide first dollar coverage, for newborns only, and neither should this court.
 
 
 21
 I concur in the affirmance.
 
 JOHN R. BROWN, Circuit Judge, dissenting:
 Prologue
 
 22
 I agree with the court that the plan does not cover newborns. Consequently the plan is not liable to the Browns. My real point of difference is that, in my point of view, under Texas law,[1] the policy issued by NALAC is a group policy of accident or sickness insurance thus triggering Texas's mandatory coverage of newborns. Thus NALAC, independent of the plan, is liable to the Browns under its insurance policy.
 
 
 23
 * * * * * *
 
 
 24
 The court's opinion[2] allows insurance companies, authorized to carry on the business of insurance in Texas, which issue policies insuring employee benefit plans, to avoid the operation of the Texas Insurance Code and its mandatory coverage provisions. The court permits this result by characterizing the NALAC policy at issue here as a stop-loss policy. It then holds that this stop-loss policy is not an individual or group policy of accident or sickness insurance even though it acknowledges that the policy indirectly covers accident and sickness losses.
 
 
 25
 The court makes an attempt to close the loophole its opinion creates by saying it has looked beyond form to substance. It goes on to say that a stop-loss policy which has a stop-loss point of $500 would be treated differently from the policy at issue here, which had an attachment point of $30,000. In other words, a $500 stop-loss policy is insurance while a $30,000 stop-loss policy is not.
 
 
 26
 The framework thus derived is unacceptable on the facts of this case, contrary to the substance of the Texas Insurance Code, and unworkable as a standard for future cases. For these reasons, I must respectfully dissent.
 
 
 27
 ERISA Saves State Regulation of Insurance Companies and Contracts
 
 
 28
 ERISA's broad pre-emption provision provides that:
 
 
 29
 Except as provided in subsection (b) of this section, the provisions of this subchapter and subchapter III of this chapter shall supersede any and all State laws insofar as they may now or hereafter relate to any employee benefit plan described in section 1003(a) of this title and not exempt under section 1003(b) of this title.
 
 
 30
 29 U.S.C. Sec. 1144(a), ERISA Sec. 514(a). However this pre-emption provision is modified by Sec. 514(b), the "insurance savings clause," which provides in pertinent part:
 
 
 31
 Except as provided in subparagraph (B), nothing in this subchapter shall be construed to exempt or relieve any person from any law of any state which regulates insurance, banking, or securities.
 
 
 32
 29 U.S.C. Sec. 1144(b)(2)(A). Subparagraph (B) is the "deemer clause" which exempts plans from the operation of state laws regulating insurance. See Metropolitan, 471 U.S. 724, 105 S.Ct. 2380, 85 L.Ed.2d 728 (1985).
 
 
 33
 This statutory scheme and Metropolitan pre-empt any state law from regulating the content of the Tuneup Masters Group Insurance Benefits Plan. Thus the Plan was not required to provide coverage for newborns and it is not structurally defective for failing to do so. I agree with the court that the plan itself does not provide any coverage for newborns. I agree also, that the plan cannot be held liable for its failure to include such coverage.[3] The Browns are not entitled to any recovery against the plan. Thus the district court's entry of summary judgment in favor of the plan was correct.
 
 
 34
 However, the plan and the policy may be treated differently. The insurance savings clause leaves NALAC, an insurance company, subject to state law. It is not freed from compliance with Texas's mandated-benefits laws by the pre-emption or deemer clauses in ERISA. Metropolitan, 471 U.S. at 740-41, 105 S.Ct. at 2389, 85 L.Ed.2d at 741.
 
 Texas Law Requires Newborn Coverage
 Article 3.70-2(E) requires that
 
 35
 [n]o individual policy or group policy of accident or sickness insurance, ... which provides for accident and sickness coverage of additional newborn children or maternity benefits, may be issued ... if it contains any provision excluding or limiting the initial coverage of a newborn infant for a period of time, or limitations or exclusions for congenital defects of a newborn child.
 
 
 36
 Tex.Ins.Code Ann. art. 3.70-2(E) (Vernon 1981).[4] The court takes the position that the NALAC policy, which it characterizes as a stop-loss policy, is not an "individual or group policy of accident or sickness insurance," and therefore that it need not comply with Art. 3.70-2(E).
 
 The Metropolitan Court informs us that:
 
 37
 nothing in Sec. 514(b)(2)(A), or in the "deemer clause" which modifies it, purports to distinguish between traditional and innovative insurance laws. The presumption is against pre-emption, and we are not inclined to read limitations into federal statutes in order to enlarge their pre-emptive scope. Further, there is no indication in the legislative history that Congress had such a distinction in mind.... In short, the plain language of the saving clause, its relationship to the other ERISA pre-emption provisions, and the traditional understanding of insurance regulation, all lead us to the conclusion that mandated benefit laws ... are saved from pre-emption by the operation of the saving clause.
 
 
 38
 Metropolitan, 471 U.S. at 741-44, 105 S.Ct. at 2389-91, 85 L.Ed.2d at 741-43 (emphasis added). This is a clear indication that mandated benefit laws, like Art. 3.70-2(E), are fully applicable to insurance policies and are not pre-empted by ERISA.
 
 
 39
 "Stop-loss" Coverage Insures a Plan
 
 
 40
 Unlike the court, and as my principal point of difference, I believe that, as a matter of Texas, not ERISA, law the NALAC policy is an insurance policy subject to the mandated benefit provision of Art. 3.70-2(E).[5] As the court points out, Texas law defines "accident and sickness insurance" very broadly as "any policy or contract providing insurance against loss resulting from sickness or from bodily injury or death by accident or both." Tex.Ins.Code Ann. art. 3.70-1(B)(3) (Vernon 1981). The NALAC policy provides such coverage. The plan reimburses employees for "eligible expenses" which are listed in a schedule of benefits. This schedule includes many surgical procedures and other treatments that become necessary because of sickness or bodily injury.
 
 
 41
 It is of no importance that NALAC makes its payments to the plan, and not to the individual receiving the benefits. Once the Texas mandatory provision (Art. 3.70-2(E)) broadens the policy's coverage to encompass newborns, the parents are obvious third party beneficiaries of the policy. NALAC is the source of funds, and NALAC's obligation to pay arises from the sickness or accident of a covered person. Thus NALAC's policy is one of "sickness or accident insurance" and by operation of mandatory Texas law covers newborns.
 
 
 42
 NALAC's Policy Was a "Group Policy" Under Texas Law
 
 
 43
 The court further contends that the NALAC policy is not an "individual policy or group policy," so NALAC does not have to comply with Article 3.70-2(E). Once again, I disagree. On my reading of the Texas statute, the NALAC policy has all the earmarks of a group insurance policy. By protecting the plan, NALAC is protecting sick and injured individuals of a defined group--the employees of Tuneup Masters.[6] The policy specifically refers to and relates to the plan. It is a "group policy" because it is
 
 
 44
 (1) ... a policy issued to an employer or trustees of a fund established by an employer, who shall be deemed the policy-holder, insuring employees of such employer for the benefit of persons other than the employer.
 
 
 45
 Tex.Ins.Code Ann. art. 3.51-6, sec. 1(a)(1) (Vernon 1990).
 
 
 46
 Thus I would hold that NALAC's so-called "stop-loss" policy is a group policy of accident and sickness insurance under Texas law. It is therefore statutorily modified to provide the newborn benefits mandated by Art. 3.70-2(E). The medical expenses incurred by the Browns' two infant children are covered. I would find the Browns entitled to recovery against NALAC which was sued as a named defendant in addition to the plan.[7] I would further hold that a $30,000 deductible on this coverage would make it invalid as contrary to the clearly expressed requirement in Texas of mandatory newborn coverage.
 
 If in Doubt, Certainty is at Hand
 
 47
 Finally, if I am wrong on my reading of Texas law, we could and should secure an answer from the only court that can give us a definitive answer to this question of state law. We should certify the state law question to the Supreme Court of Texas.[8]
 
 
 48
 Because the court's opinion creates a system whereby insurance companies may avoid the operation of the Texas Insurance Code, I must respectfully dissent.
 
 
 
 [1]
 I claim no superior prescience to that of my colleagues, each of whom was a distinguished Texas practitioner and jurist, one of whom was a long time Justice on the court I urge be importuned if I am wrong or doubtfully correct on my reading of Texas law
 
 
 [2]
 References to "the court" or "the court's opinion" are primarily to the opinion of Judge Higginbotham. However, my dissent goes as well to Judge Reavley's short concurrence which I disagree with because (i) this case presents serious questions of both ERISA and Texas law, and (ii) I believe the Texas statute does rewrite NALAC's policy to include the mandated newborn coverage
 
 
 [3]
 See, e.g., Metropolitan, 471 U.S. at 732-33, 105 S.Ct. at 2386-87, 85 L.Ed.2d at 735-36 ("[ERISA] does not regulate the substantive content of welfare-benefit plans.); Shaw v. Delta Air Lines, Inc., 463 U.S. 85, 91, 103 S.Ct. 2890, 2896, 77 L.Ed.2d 490, 497 (1983) ("ERISA does not mandate that employers provide any particular benefits.")
 
 
 [4]
 Justice Blackmun informs us that "over the last 15 years all 50 States have required that coverage of infants begin at birth, rather than at some time shortly after birth, as had been the practice in the unregulated market." Metropolitan, 471 U.S. at 729, 105 S.Ct. at 2384, 85 L.Ed.2d at 733
 
 
 [5]
 The only circuits which have addressed the specific question of whether a plan which purchases stop-loss insurance is an "insured" plan under Metropolitan such that a state's mandated benefits laws must be adhered to by the insurer are the Sixth and Ninth
 The Ninth Circuit held, in Moore v. Provident Life & Acc. Ins. Co., 786 F.2d 922, 926-27 (9th Cir.1986), that the stop-loss insurer's function was not the "business of insurance." The claims were therefore pre-empted by ERISA and not saved by the insurance savings clause. This rationale was followed in United Food & Commercial Workers v. Pacyga, 801 F.2d 1157, 1161-62 (9th Cir.1986). Several district courts have followed the direction of the Ninth Circuit. See, e.g., Drexelbrook Engineering Co. v. The Travelers Ins. Co., 710 F.Supp. 590 (E.D.Pa.1989), aff'd without opinion, 891 F.2d 280 (3d Cir.1989); Birdsong, et al. v. Olson, et al., 708 F.Supp. 792 (W.D.Tex.1989); Rasmussen v. Metropolitan Life Ins. Co., 675 F.Supp. 1497 (W.D.La.1987); Minnesota Chamber of Commerce & Industry v. Hatch, 672 F.Supp. 393 (D.Minn.1987); Bone v. Assoc. Management Services, Inc., 632 F.Supp. 493 (S.D.Miss.1986); Cuttle v. Federal Employees Metal Trades Council, 623 F.Supp. 1154 (D.Maine 1985); and Hutchinson v. Benton Casing Service, Inc., 619 F.Supp. 831 (S.D.Miss.1985).
 I believe the better reasoned approach is that adopted by the Sixth Circuit in Michigan United Food and Commercial Workers Unions v. Baerwaldt, 767 F.2d 308, 312-13 (6th Cir.1985), cert. denied, 474 U.S. 1059, 106 S.Ct. 801, 88 L.Ed.2d 777 (1986) and Northern Group Services, Inc. v. Auto Owners Insurance Co., 833 F.2d 85, 91 (6th Cir.1987), cert. denied, 486 U.S. 1017, 108 S.Ct. 1754, 100 L.Ed.2d 216 (1988). The Sixth Circuit found that the "stop-loss" nature of the insurance purchased by the plans in those cases was irrelevant--the plans were insured.
 Whether the actual insured is the employer or the ERISA plan, the stop loss insurance is purchased to "provide benefits for plans subject to ERISA." Metropolitan Life, 471 U.S. at 738 n. 15, 105 S.Ct. at 2388 n. 15. That the plan pays a deductible does not alter the fact that benefits payable above specified levels, either on an individual beneficiary or in the aggregate, are nonetheless insured. See Baerwaldt, 767 F.2d at 313.
 Northern Group Services, 833 F.2d at 91. Several district courts have likewise followed this approach. See, e.g., Hall v. Pennwalt Group Comprehensive Medical Expense Benefits Plan, Civ. Action No. 88-7672, 1989 WL 45627 (E.D.Pa.1989) [1989 U.S. Dist. LEXIS 3018]; Auto Club Ins. Assoc. v. Mutual Savings and Loan Assoc., 672 F.Supp. 997 (E.D.Mich.1987); State Farm Mutual Automobile Ins. Co. v. American Community Mutual Ins. Co., 659 F.Supp. 635 (E.D.Mich.1987), aff'd without opinion, 863 F.2d 49 (6th Cir.1988); and Simmons v. Prudential Ins. Co. of America, 641 F.Supp. 675 (D.Colo.1986).
 
 
 [6]
 The Plan describes those covered as the "eligible Employees of the Employer and their eligible Dependents."
 
 
 [7]
 I re-emphasize that although on my reading of Texas law, the plan was an "insured" plan, no recovery is available against the plan. Metropolitan is very clear that state mandatory benefit laws are pre-empted by ERISA from directly regulating the content of a plan. Recovery is available only against NALAC, the insurer, which can be regulated by the state--even when insuring a plan--because of the savings clause which excepts it from ERISA's general pre-emption provision
 
 
 [8]
 Texas Rules of Appellate Procedure 114(a) states that a question of state law can be certified to the Supreme Court of Texas if "it appears to the certifying court that there is no controlling precedent in the decisions of the Supreme Court of Texas." See Lucas v. United States, 807 F.2d 414, 418 (5th Cir.1986)