**BRICKLAYERS LOCAL NO. 1 WELFARE FUND, et al.**

v.

**LOUISIANA HEALTH INSURANCE ASSOCIATION, et al.**

Civ. A. No. 91–0925.

United States District Court, E.D. Louisiana.

Aug. 23, 1991.

Marie Healey, Jeanne Theresa Cresson, Sarah Hall Voigt, Sean Renee Dawson, Maria C. Cangemi, Marie Healey & Associates, APLC, New Orleans, La., for plaintiffs.

Fred Lee Butler, John W. Lindner, II, Charles Don Williams, Adams & Reese, New Orleans, La., for defendants.

ORDER AND REASONS

CHARLES SCHWARTZ, Jr., District Judge.

This matter is before the Court on the CROSS–MOTIONS FOR SUMMARY

JUDGMENT filed on behalf of PLAINTIFFS, Bricklayers Local No. 1 Welfare Fund, New Orleans Electrical Health and Welfare Fund, Iron Workers Local 58 Health & Welfare Fund, Iron Workers Welfare Fund and Western Louisiana Laborers Welfare Fund [hereinafter referred to collectively as "the Plans"] and DEFENDANTS, Louisiana Health Insurance Association and its Board of Directors [hereinafter referred to collectively as "LHIA"], respectively, regarding *et seq.*, by ERISA. Said motions were set for oral hearing on August 21st, 1991, but were submitted on briefs.

## I. FACTUAL BACKGROUND.

This action for declaratory judgment was recently brought by the five multi-employer benefit welfare funds aforementioned. All of the funds are administered pursuant to § 302(c)(5) of the Labor Relations Act, 29 U.S.C. § 186(c)(5), as well as ERISA, 29 U.S.C. § 1001 *et seq.*

Each plaintiff Plan maintains a benefit plan providing health care coverage to covered employees of participating employers and to the employees' eligible dependents and has been granted tax exempt status under the Internal Revenue Code, 26 U.S.C. § 501(c)(9), and Treasury Regulation thereunder.

Only one of plaintiff Plans, that is Iron Workers Local 58, has a stop-loss or excess risk coverage policy in effect, whereby a third party insurer which reimburses the Iron Workers Local for benefits paid out in excess of stop-loss limits. The Iron Workers Local 58 is subject to a $40,000.00 individual stop-loss limit.

Plaintiff Plans do not provide for the service charges imposed by Louisiana Act 131 as a benefit. All of the Plans have received demands for payment of service charges allegedly due pursuant to the aforementioned Act.

## II. THE LAW.

It is undisputed that Plaintiff Plans are included within ERISA's § 3(1) definition and therefore subject to regulation thereunder. Section 514(a) of ERISA, 29 U.S.C. § 1144(a), generally referred to as the "preemption clause", provides that the provisions of Subchapter I [entitled "Protection of Employee Benefit Rights"] and III [entitled "Plan Termination Insurance"]—

> [S]hall supersede any and all State laws insofar as they may now or hereafter *relate to* any employee benefit plan described in 1003(a) of this title and not exempt under 1003(b) of this title.... [1] [emphasis supplied].

Exempted for the purposes of the preemption clause is "any law of any State [2] which regulates insurance, banking, or securities," [3] and "any generally applicable criminal law of a State."

> Neither an employee benefit plan described in § 1002(a) ... nor any trust established under such a plan shall be deemed to be an insurance company or other insurer ... or to be engaged in the business of insurance ... or for the purposes of any state law of any State purporting to regulate insurance companies ... [or] insurance companies ... [or] insurance contracts.... [4]

The sole issue before the Court is the application of the ERISA preemption provisions outlined above to Louisiana Act 131, which establishes and creates the Louisiana Health Insurance Association to administer a catastrophic health insurance program and to collect funding to support it. Funding is provided by means of "service

---

**1.** Section 1003(a) describes as covered by the Act any employee benefit plain maintained by an employer, employee organization, or both to the extent they are engaged in commerce; § 1003(b) lists plans exempted for ERISA coverage—that is governmental, church, workers' compensation plans, those maintained outside the United States for non-resident aliens, and unfunded excess benefit plans as defined in § 3(1)(26) of the Act.

**2.** The term "State law" is defined to include "all laws, decisions, rules, regulations, or other State action having the effect of law, of any State." § 514(c), 29 U.S.C. § 1144(c).

**3.** § 514(b)(2)(A) [generally referred to as the "saving clause"], 29 U.S.C. § 1144(b)(2)(A).

**4.** § 514(b)(2)(B) [generally referred to as the "deemer clause"], 29 U.S.C. § 1144(b)(2)(B).

charges" to be paid by any "insurance arrangement," "insurer," or "self-insurer" extending benefits in the State of Louisiana.

This program is funded by service charges which are assessed against the patient who is admitted to a hospital or who receives out-patient surgery.[5] A $2.00 a day charge is assessed for each day a patient is confined to the hospital and a patient who undergoes out-patient ambulatory surgery is charged $1.00 for each such procedure.[6] The hospital and/or ambulatory clinic is required to collect such charges.[7] The Act makes the patients' insurance arrangement directly responsible for payment of the charges and further requires payment of the charge be a "mandated benefit."[8]

There is no dispute that the statute purports to directly affect the self-insured ERISA employee benefit Plans at issue and to impose and to collect service charges from them while operating in the state.

Defendants in the case at bar have urged this Court to deny summary judgment and essentially forth two reasons, to wit: (1) that the Iron Workers Local 58 Plan, which plan has admittedly purchased stop-loss policy, arguably is not a self-insured/self-funded employee benefit plans; and (2) that the financial impact of service charges on the Plans is "remote, tenuous and peripheral", an exception to the preemption provisions of ERISA.

The issue posed by the LHIA in the case at bar [i.e. whether stop-loss insurance robs and ERISA employee benefit plan of its otherwise self-insured status citing the Fifth Circuit in *Brown v. Granatelli*, 897 F.2d 1351, 1355 (5th Cir.1990) ] is indeed a "red herring."

In *Brown* the court considered a Texas statute that required any "individual policy or group policy of accident or health insurance which provides for an accident and sickness coverage" issued in the state to include coverage for congenital defects of newborns. The plaintiffs therein sought to recover such benefits directly from the stop-loss carrier, conceding and the Court confirmed, that if the law applied directly to the employee benefit plans, its application would be preempted, which is the issue in the case at bar.

The *Brown* court held that the stop-loss policy was not a policy of accident insurance within the meaning of Texas law, because it did not benefit the individuals but the plan itself.

The *Brown* court limited its holding, as follows:

> [W]e are wary lest an overly literal reading of the statute frustrate an otherwise manifest legislative purpose. We do not suggest that Article 3.70–2E can be avoided by naming an employee benefit plan as the insured on a policy which in reality insures the plan participants. If, for example, a plan paid only the first $500 of a beneficiaries health claim, saving all else to the insurer, labeling its coverage stop-loss or catastrophic coverage would mask the reality that is close to a simple purchase of group accident and sickness coverage. We look beyond form in the substance of the relationship between the plan, the participants, and the insurance carrier to see whether the plan is in fact purchasing insurance for itself and not for the plan participants, recognizing, that as insurance is loss for catastrophic loss, it is increasingly like accident and sickness insurance for plan participants. *Id.* at 1355.

The court concluded stating that if the Plan were merely a conduit for claims form participants to the stop-loss carrier, it could not reach the conclusion it did.

In the case at bar, apparently attempting to distinguish *Brown* and to characterize plaintiff Plans as "mere conduits" for claims from the participants to the stop-loss carriers, defendants have filed doc-

---

**5.** L.R.S. 22:239.

**6.** L.R.S. 22:239 A(1) and B.

**7.** L.R.S. 22:239 C.

**8.** L.R.S. 22:213.2 A and 241.

uments into the record *arguably*[9] indicating that beginning in 1990, Iron Workers Local 58's stop-loss insurer reimbursed that Plan 46% of the total claims paid to beneficiaries during the period of December 1, 1989 and November 30, 1990.[10]

LHIA's reliance on the dicta in the *Brown* case is misplaced. The Fifth Circuit in *Brown* initially disposed of the issue which is before this Court today: whether a state insurance law may "by its letter" apply to an ERISA plan insured by a stop-loss policy. The Fifth Circuit held in no uncertain terms that such a state law cannot be enforced against a Plan insured by a stop loss policy or any other policy, to wit:

> The Browns admit that if Article 3.70–2(E) by its letter applied directly to employee benefit plans, its application would be preempted by ERISA. In *Metropolitan [Life] Ins. Co. v. Massachusetts*, 471 U.S. 724, 105 S.Ct. 2380, 85 L.Ed.2d 728 (1985), the Supreme Court held that mandated-benefit laws directly applicable to employee benefit plans are preempted by ERISA.[11]

The *Brown* court explains that plans which purchase insurance can be *indirectly* regulated by mandated-benefit laws because ERISA does not prevent those laws from being applied to the insurance policies which plans purchase. Moreover, the question of whether ERISA preempted Texas' indirect attempts to reach the plan by exacting compliance from its stop-loss carrier was foreclosed by interpreting the Texas statute to put stop-loss insurers beyond its reach. As counsel for plaintiff Plans argues, since Iron Worker's Local 58's stop loss carrier is not a party to these proceedings, the question of whether ERISA preempts Act 131's intent to exact compliance from a stop-loss insurer, thereby *indirectly* reaching the Plan is not before this Court. In other words, the precise language in *Brown*, upon which the LHIA and its Board attempt to hang their hat and which language is quoted at length above bears no relation to the issues before this Court.

The State of Louisiana may not enforce Act 131 against Plaintiffs as ERISA plans, whether or not they are insured.[12] Recharacterization of Iron Worker's Local 58's stop-loss policy as accident and sickness insurance for the plaintiff Plans' participants, is wholly immaterial to the issue before this Court, which was disposed of at the outset in *Brown* in favor of ERISA preemption.

Defendants herein further assert the defense that the relationship between Act 131 and the plaintiff Plans is too tenuous and remote to warrant preemption by ERISA, citing *Shaw v. Delta Airlines, Inc.*, 463 U.S. 85 n. 21, 103 S.Ct. 2890 n. 21, 77 L.Ed.2d 490 n. 21 (1983), which states:

> Some state actions may affect employee benefit plans in too tenuous, remote and peripheral a manner to warrant a finding that the law 'relates to' the Plan.

In *Metropolitan Life Insurance Co. v. Massachusetts*, 471 U.S. 724, 105 S.Ct. 2380, 2389, 85 L.Ed.2d 728 (1985), the Supreme Court held that a state law "relates to" an employee benefit plan "if it has a connection with or a reference to such a plan."[13] The Supreme Court considered whether ERISA preempted a Massachusetts statute, an insurance regulation de-

---

**9.** In Opposition Memorandum to Defendant's Motion for Summary Judgment, counsel for plaintiff Plans submits that the figure of total claims paid out for the year 1990 cited by defendants is inaccurate, having been gleaned from a report which referred to *incurred* claims and submits via affidavit of Maurice Cazaubon that claims actually paid in 1990 totalled $724,011, of which the plan was reimbursed only approximates 33% which is significantly less that the 48% posited by defendants. Moreover, the 1990 stop-loss policy had a $30,000 attachment point as opposed to the current stop loss policy which has a $40,000 attachment point and may well result in even lower reimbursements and fewer stop-loss claims.

**10.** See, Defendants' Memorandum in Support of Motion for Summary Judgment at p. 10 and Defendant's Exhibits 12 and 13.

**11.** *Brown,* 897 F.2d at 1353.

**12.** *Gonzales v. Prudential Insurance Company of America,* 901 F.2d 446, 453–4 (5th Cir.1990); and *Brown,* supra.

**13.** See also, *Shaw v. Delta Airlines, Inc.,* 103 S.Ct. at 2900.

signed to implement the State's policy on mental health care.[14] The Supreme Court held that it affected the benefit plan indirectly but substantially because it mandates the Plans purchase of mental health benefits specified in the statute. *Id.* 105 S.Ct. at 2389.

In *Sommers Drug Stores v. Corrigan Enterprises, Inc.*, 793 F.2d 1456 (5th Cir. 1986), the Fifth Circuit recognized and discussed the "tenuous, remote, and peripheral" exception to ERISA preemption. The Fifth Circuit focussed on whether the state law affects relations among the principal ERISA entities as opposed to one of these entities [i.e. the employer, the Plan, the Plan fiduciaries, and Plan participants] and an outside party or between two outside parties with only an incidental effect on the plan. *Id.* at 1467–68. The *Sommers* court was of the opinion that the traditional and/or nontraditional nature of the state law had no bearing on the question of whether a state law of general application affects a plan in so tenuous, remote, or peripheral a way that it cannot be said to "relate to" the plan within the meaning of § 514(a).

In *Sommers*, supra, the Fifth Circuit found that the state common law of corporate fiduciary duty centered upon the relationship between a corporate director and a shareholder [i.e., both "outside parties"] and did not affect the relations between an ERISA fiduciary and the plan or its beneficiaries. Essentially, the court found that the state law affected them in their separate capacities as corporate director and shareholder. *Id.* at 1468.

The Fifth Circuit's analysis in *Brown*, supra, when applied to the case at bar, inevitably leads this Court to the opposite conclusion, that Act 131 does not fall within the exception, because it mandates bene-

fits which must be paid from Plan assets. Act 131 indisputably affects the relations among the principal ERISA entities.[15] Plaintiff Plans submit that Plan participants and beneficiaries will be affected by the assessment of service charges, since funding of said service charges in lieu of other benefits, could result in strangers benefitting from Plan assets intended for participants' exclusive benefit by effectually creating a new class of beneficiaries [i.e., individuals suffering from catastrophic illnesses mandating payment of benefits on their behalf from ERISA plans].[16]

Plaintiff Plans in the case at bar concede that the amount of service charges required by Act 131 is presently small in relation to the total claims paid. However, the potential economic impact should include consideration Section 213.2(B) of the Act which provides for assessment of penalties, attorney's fees, interest and costs for the Plans failure to comply with said Act.

The Fifth Circuit in *Iron Workers Pension Fund v. Terotechnology*, 891 F.2d 548, 556 (5th Cir.1990), characterized the creation of an additional party who can be liable to plans for contribution as a substantial effect on the plans. Apparently, economic impact on the plans is immaterial where other factors in and of themselves substantially affect plan administration.

By its terms, Act 131 relates to the ERISA plans at issue, in the following substantial aspects: (1) it provides for the payment of benefits to a class of individuals who are neither designated beneficiaries by the respective Plans or Plan participants; and (2) it further purports to assess service charges against individual Plan beneficiaries either admitted to a hospital or who receives out-patient surgery. Any financial impact of Act 131 is immaterial to the determination of this Court in light of the

---

**14.** Section 47B, a typical mandated-benefit law, requires any group health insurance policy to provide certain minimum of mental-health protection.

**15.** "R.S. 22:239 C requires the hospital and/or ambulatory service clinic collect these service charges. Under the Act, the patients' insurance [i.e., the beneficiaries' Plan in the case at bar] or

insurance arrangement is responsible for paying the assessment. The Act also requires that payment of the service charge is to be a 'mandated benefit'. R.S. 22:213.2A and 241." See, Defendants' Memorandum in Opposition to Motion for Summary Judgment, at p. 2.

**16.** See, Plaintiffs' Reply Memorandum at p. 9.

Act's substantial effects on plaintiff Plans by direct regulation of the principal ERISA entities concerned.

Essentially, Act 131 mandates coverage of catastrophic illnesses in the case of individuals who are otherwise not beneficiaries pursuant to plaintiff Plans and is preempted as to plaintiffs' self-insured Plans. ERISA itself does not mandate provision of any specific benefit coverage, not does it regulate the substantive content of the welfare employee benefit plans.[17]

Moreover, nearly all of the relationships referred to in *Sommers*, supra, are affected by Act 131. This is the type of impact Congress apparently intended to avoid when it enacted ERISA legislation. Whether construed as a "tax"[18] or a "mandated benefit"[19] law, the Act is preempted as to plaintiff Plans. Accordingly, plaintiffs in the present case cannot be sued for their failure to comply with said Act.[20]

There being no genuine issue as to *material* fact, and considering the submissions of the parties, and the applicable law,[21]

IT IS ORDERED that Plaintiffs' Motion for Summary Judgment is hereby GRANTED;

IT IS FURTHER ORDERED that Defendants' Motion for Summary Judgment is DENIED;

IT IS FURTHER ORDERED that declaratory judgment issue herein in favor of plaintiffs, Bricklayers Local No. 1 Welfare Fund, New Orleans Electrical Health and Welfare Fund, Iron Workers Local 58 Health & Welfare Fund, Iron Workers Welfare Fund and Western Louisiana Laborers Welfare Fund and against defendants, the Louisiana Health Insurance Association and its Board of Directors, the Honorable J.E. Jumonville, Director; Doug Talbot, vice-chairman; Russell Henry, Director; Gilbert J. Dupre, Jr., Director; Charles Calvi, Director; the Honorable C. Dale Settig, Chairman; Ken Krogstadt, Director; the Honorable Hunter Wagner, Director and Acting Commissioner of Insurance; Charles Hughes, Jr., Director; Brue Chandler, Director; Dr. James Vildibill, Jr., Director; David Czernik, Director; and Frank Parks, Director, declaring that Act 131, L.R.S. 22:213.2 and 231 *et seq.* is preempted by § 514(a) of ERISA as to plaintiff Plans aforementioned, and that said Plans are not required to comply with Act 131, and defendants herein are barred from asserting any action against them on the basis of noncompliance with said Act.

The Clerk of Court is directed to enter judgment in accordance herewith.

---

17. *Metropolitan Life Insurance Co. v. Massachusetts*, 105 S.Ct. at 2385.

18. *E–Systems, Inc. v. Pogue*, 929 F.2d 1100, 1103 (5th Cir.1991) ["That Congress intended to preempt state taxation laws can no longer be gainsaid.... The congressional intent appears clear, state tax laws were preempted even before they were specifically enumerated in the amended statute."]

19. *Brown v. Granatelli*, 897 F.2d 1351, 1355 (5th Cir.1990).

20. See, *Gonzales v. Prudential*, 901 F.2d 446, 454 (5th Cir.1990) ["Under the deemer clause, however, an ERISA plan whether insured or uninsured, may not itself be forced to conform to state insurance laws—even assuming such laws are spared from the preemption by the saving clause—or be sued for their failure to comply

with such laws."]; and *Brown v. Granatelli*, 897 F.2d at 1353–54 [holding the statutory scheme and *Metropolitan v. Massachusetts*, preempt any state law from regulating the content of employee benefit plans.].

21. This Court particularly heeds the Supreme Court's admonitions to accord a broad reading to ERISA's preemption clause. See, *E–Systems v. Pogue*, 929 F.2d 1100, 1103 (5th Cir.1991). In *Pogue*, the Fifth Circuit examined the economic impact of a state tax and while determining it to be a significant factor in holding the state law "related to" ERISA plans was preempted, the court relied on other equally significant factors, including Congress' intent to preempt state tax laws, the tax's effect on the principal ERISA relationships referred to in *Sommers*, supra, and the Supreme Court's admonitions to accord the broadest possible reading to ERISA's § 514(a) preemption clause. *Id.* at 1103.