Donald A. BUCHMAN, et al., Plaintiffs,

v.

WAYNE TRACE LOCAL SCHOOL DISTRICT BOARD OF EDUCATION, et al., Defendants.

Civ. No. 90–CV–7170.

United States District Court,
N.D. Ohio.

May 17, 1991.

Craig L. Roth, Gretick, Bish, Lowe & Roth, Bryan, Ohio, for plaintiffs.

Stephen F. Korhn, Clemens, Korhn, Palmer & Liming, Defiance, Ohio, Stephen F. Ahern, Manahan, Pietrykowski, Bamman & Delaney, Toledo, Ohio, Robert M. Riffle, Keck, Mahin & Cate, Peoria, Ill., for defendants.

Robert A. Koenig, Shumaker, Loop & Kendrick, Toledo, Ohio, for Great–West Life Assur. Co. third-party defendant.

## MEMORANDUM AND ORDER

WALINSKI, Senior District Judge.

This action is before the Court on the plaintiff's second motion for summary judgment on the fifth claim for relief of the second amended complaint. Defendants, Morton Buildings, Inc., Jefferson Trust and Savings Bank, Kepple & Company, Jim Cochran, Health and Welfare Plan for Employees of Trustees of Morton Buldings, Inc., Voluntary Employee Benefit Association, (collectively "plan defendants") and Great–West Life Assurance Co., ("plan defendant Great–West") oppose and file a cross motion for summary judgment. Defendant, Board of Education of the Wayne Trace Local School District ("Board") opposes both plaintiffs' second motion for summary judgment and plan defendants' cross-motions for summary judgment. This Court has jurisdiction pursuant to 28 U.S.C. § 1331.

### Background

As a result of the accident which occurred on September 1, 1989, plaintiff has incurred certain medical bills and expenses which according to plaintiff are covered under plaintiff's employee benefit plan. The motions for summary judgment before this Court deal with plaintiffs' contention, as stated in their fifth claim for relief, that plan defendants are required to make payment of these expenses to plaintiff immediately. Plaintiffs insist that plan defendants have wrongfully withheld benefits under the plan to which they are entitled, regardless of whether plan defendants will be able to exercise subrogation rights against the tortfeasor. Plaintiffs also contend that such payment must be made without requiring plaintiffs to sign a lien and reimbursement agreement, as required by the terms of the plan. Plan defendants maintain their absolute right, under the terms of a contract, to subrogate their claims against the actual tortfeasor and to require plaintiff to comply with the execution of certain documents before payment of benefits.

### Discussion

The Court's function in ruling on a motion for summary judgment is to determine if any genuine issue exists for trial, not to resolve any factual issues, and to deny summary judgment if material facts are in dispute. *United States v. Articles of Device, etc.,* 527 F.2d 1008, 1011 (6th Cir. 1976); *Tee–Pak, Inc. v. St. Regis Paper Co.,* 491 F.2d 1193, 1195 (6th Cir.1974). Further, "[i]n ruling on a motion for summary judgment, the evidence must be viewed in a light most favorable to the party opposing the motion." *Bouldis v. U.S. Suzuki Motor Corp.,* 711 F.2d 1319, 1324 (6th Cir.1983). To summarize, summary judgment is only appropriate when no genuine issue of material fact remains to be decided, and when the undisputed facts, viewed in a light most favorable to the non-moving party, entitle the movant to judgment as a matter of law. *Smith v. Pan Am World Airways,* 706 F.2d 771, 773 (6th Cir.1983).

A principal purpose of summary judgment "is to isolate and dispose of factually unsupported claims or defenses." *Celotex Corp. v. Catrett,* 477 U.S. 317, 323–24, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986). Rule 56(e) places responsibility on the party against whom summary judgment is sought to demonstrate that summary judgment is improper, either by showing the existence of a material question of fact or

that the underlying substantive law does not permit such a decision. In relevant part, the provision states:

> When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of his pleading, but his response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing there is a genuine issue for trial. If he does not so respond, summary judgment, if appropriate, shall be entered against him.

Rule 56(e), Fed.R.Civ.P. Rule 56(e) requires the non-moving party to go beyond the pleadings, and by affidavits, depositions, answers to interrogatories, or admissions on file, designate specific facts showing a genuine issue for trial. *Celotex Corp. v. Catrett*, 477 U.S. at 324, 106 S.Ct. at 2553.

█ Before proceeding with the primary issues in these motions for summary judgment, this Court must first dispense with defendant Board's motion to strike the opposition of plan defendants to plaintiffs' second motion for summary judgment. Defendant would have this Court ignore this opposition on the grounds that plan defendants' brief contains factual assertions not supported by affidavit or other evidence, as is required under Rule 56(e) of the Federal Rules of Civil Procedure.

It is clear from this Court's perusal of the record, however, that the plan defendants' contentions are supported by facts contained therein. Therefore, the motion to strike is not well taken. In this motion to strike, defendant Board also asks for leave to pursue discovery on the issue of the manner in which the benefit plan at issue is funded. As no trial date has yet been set, there is no impediment to such discovery. However, all applicable policies and handbooks have been submitted to the Court as supplements to the parties' motions for summary judgment. Thus, the Court is in possession of everything necessary to reach a conclusion in this case.

Plaintiff's primary argument in support of his motion for summary judgment hinges on an Ohio statute. In pertinent part, that statute provides:

> If a claimant receives or is entitled to receive benefits for injuries or loss allegedly incurred from a policy or policies of insurance or any other source, the benefits shall be disclosed to the court, and the amount of the benefits shall be deducted from any award against a political subdivision recovered by that claimant. No insurer or other person is entitled to bring an action under a subrogation provision in an insurance or other contract against a political subdivision with respect to such benefits.

Ohio Rev.Code § 2744.05(B). At the time of the accident which is the basis for this suit, plaintiff was employed by Morton Buildings, Inc. and as such was covered by the terms of an employee benefit plan. Thus, under the terms of the above statute, this Court would be required to deduct from the amount of any verdict rendered in favor of plaintiff any benefits received by him under this plan. To date, the plan in question has paid nothing toward plaintiffs' medical expenses. Those expenses totalled approximately $237,000 as of September of 1990.

The instant dispute is focused on certain conditions under which plan defendants are obligated to make payments under an employee benefit plan for injuries sustained as the result of an alleged third-party tortfeasor. Plaintiff contends that they are entitled to immediate payment of all outstanding medical bills under the plan. Indeed, plaintiffs argue that the issues under their Fifth Claim for Relief of the First Amended Complaint need to be decided before trial on the remaining portions of this case in order to comply with the above statute.

Plan defendants argue that any order by this Court requiring such action by them would result in an improper modification of and interference with their rights under a contract. Most importantly, plan defendants argue that the Ohio Rev.Code statute on which plaintiffs rely to establish liability on the part of the plan is preempted by the Employee Retirement Income Security Act

of 1974 (ERISA), 29 U.S.C. §§ 1001 *et seq.* For the following reasons, this Court is in agreement with plan defendants on the issues now before it.

Two separate health and welfare plans apply to the claims made by plaintiffs in this case. The first plan ("Plan 1") and its accompanying handbook ("Handbook 1") was in effect through the month of September (in which the accident occurred) of 1989. The second plan ("Plan 2") and its accompanying handbook ("Handbook 2") became effective October 1, 1989 and remains in effect to this day. Each of these plans is similar with respect to the benefits available to covered employees. Each plan contains subrogation provisions allowing the plan to recoup benefits paid out under the plan from a third-party tortfeasor. Each plan contains a provision requiring the employee to execute certain documents before benefits are paid out.[1]

■ As an initial matter, plaintiffs urge this Court to declare Ohio Rev.Code § 2744.05(B) constitutional.[2] However, this Court is bound to consider non-constitutional grounds for decision before passing on such constitutional questions. *See Gulf Oil Co. v. Bernard,* 452 U.S. 89, 99, 101 S.Ct. 2193, 2199, 68 L.Ed.2d 693 (1981) and *Jean v. Nelson,* 472 U.S. 846, 854, 105 S.Ct. 2992, 2996, 86 L.Ed.2d 664 (1985). The Court is able to reach a decision without passing on the constitutionality of the above statute. Therefore, the well-settled policy of judicial restraint precludes this Court from considering that issue. *Id.*

The applicability of the above statute to plaintiffs' fifth claim for relief must be considered, however. This Court's decision on this issue is made easier by the recent ruling of the United States Supreme Court in *FMC Corp. v. Holliday,* —— U.S. ——, 111 S.Ct. 403, 112 L.Ed.2d 356 (1990). The Court in *Holliday* concluded that ERISA preempts the application of state antisubrogation laws to self-funded health care plans. Essentially, the Court reasoned that the state statute at issue there, Pennsylvania's Motor Vehicle Financial Responsibility Law, 75 Pa.Cons.Stat. § 1720 (1987), related to an employee benefit plan. The Court further found that while such a statute would ordinarily be "saved" by ERISA's "savings clause", ERISA's "deemer clause" resulted in the exclusion of its application to self-funded plans.[3]

Although the Sixth Circuit has yet to rule on the preemption of state anti-subrogation laws, two other circuits have had an opportunity to do so and have followed the mandate of *FMC, supra. See Provident*

---

1. Handbook 1 gives the plan three options: 1.) to take over the employees right to receive payment of benefits from a third party, 2.) to recover from the employee payment for benefits paid under the plan from amounts paid to employee by the third party, which gives the plan a first lien upon any recovery, and 3.) to require the employee to execute whatever documents are necessary to exercise the plan's rights before any benefits are paid under the plan. Handbook 2 specifically entitles the plan to withhold benefits until the covered person executes such documents as the plan requires to facilitate its rights under the plan. Handbook 2 also includes an excess insurance provision and a provision that payments may be conditioned on the covered person's agreement in writing to 1.) reimburse the plan to the extent of benefits received, *and* 2.) provide the plan with a lien to the extent of benefits provided to the covered person by the plan.

2. Plaintiffs refer the Court to *Menefee v. Queen City Metro,* 49 Ohio St.3d 27, 550 N.E.2d 181 (1990) which held that the anti-subrogation provision in that statute was constitutional. However, a district court case, *Greyhound Food*

*Management, Inc. v. City of Dayton,* 653 F.Supp. 1207 (S.D.Ohio 1986), *aff'd,* 852 F.2d 866 (6th Cir.1988) declared this statute to be unconstitutional as a violation of equal protection, due process and the taking clause of the United States Constitution. Of course, this Court is not bound by state court decisions on federal constitutional questions. *U.S. ex. rel. Moore v. Woods,* 420 F.2d 1260 (7th Cir.1970).

3. That clause provides in pertinent part: "[E]xcept as provided in subparagraph (B), nothing in this subchapter shall be construed to exempt or relieve any person from any law of any state which regulates insurance, banking, or securities." 29 U.S.C. § 1144(b)(2)(A). Subparagraph (B) is known as the "deemer clause" and provides in pertinent part: [A]n employee benefit plan ... shall [not] be deemed to be an insurance company or other insurer ... or to be engaged in the business of insurance ... for purposes of any law of any State purporting to regulate insurance companies, insurance contracts,...."

*Life and Accident Insurance Co. v. Linthicum,* 930 F.2d 14 (8th Cir.1991) and *Thompson v. Talquin Building Products Company,* 928 F.2d 649 (4th Cir.1991). In *Linthicum,* the administrator of a health benefits plan filed an action for declaratory and injunctive relief against a plan participant and covered dependents for recovery of funds that had already been paid for medical expenses. The Court of Appeals upheld the district court's decision granting the administrator judgment on its subrogation claim. In *Thompson,* an employee health plan which excluded coverage for medical expenses resulting from automobile accidents was held to be covered by ERISA's deemer clause preempting a state statute making such exclusion illegal.

■ It is clear to this Court that Ohio Rev.Code § 2744.05(B) is preempted by ERISA. This entire dispute centers on benefits which plaintiff "receives or is entitled to receive" from an employee benefit plan. Thus, the only possible application of the statute in the case at bar makes clear that it relates to an employee benefit plan. Moreover, despite plaintiffs' allegation in paragraph 38 of the first amended complaint, the plan at issue here is clearly an employee benefit plan under ERISA. *See* 29 U.S.C. § 1002(1). Although anti-subrogation clauses are typically saved by ERISA's savings clause as they regulate insurance, employee benefit plans which are self-funded are "saved" from the savings clause because of the operation of the "deemer clause". Thus, for purposes of plaintiffs' motion for summary judgment on the fifth claim for relief such a statute is clearly preempted by ERISA under the Supreme Court's recent ruling in *FMC v. Holliday, supra.,* as long as the plan at issue is indeed, self-funded.

Plaintiffs do not specifically address this issue in their motion for summary judgment. Instead, they appear to rely totally on arguments surrounding application of a state statute which this Court has determined is inapplicable to the case at bar because it is preempted by ERISA. Defendant Board, however, has asked this Court to strike the opposition of plan defendants due to what they insist are unsupported factual assertions regarding the plan funding. In keeping with its ruling on this motion to strike, this Court has fully considered plan defendants' opposition as well as the cross motions for summary judgment submitted by those plan defendants and plan defendant Great–West.

Despite defendant Board's claim in its motion to strike for the necessity of more discovery on this issue, it seems clear from the record that the plans at question here are self-funded. Paragraph 5 of the General Information section in Handbook 1 (relating to Plan 1) plainly states that the "employer completely funds the weekly income, hospital, medical, and dental care benefits ..."[4] This funding was accomplished through the Morton Buildings, Inc. Employee Benefits Trust ("Trust"). The plan trustee at the time was Jefferson Bank. Claims are paid through the trust.

Plan 2 continued with the same type of funding structure. Paragraph 6 of Handbook 2 (relating to Plan 2) states that "the plan is self-funded by Morton Buildings, Inc.", with the "cost of providing benefits under the plan ... shared by the employer and employees." Paragraph 12 of Handbook 2. The only piece of evidence in the record that could even possibly cast doubt on the self-funded nature of these plans is the fact that under both plans, stop-loss insurance was purchased to protect the employer against catastrophic losses.

Under the first plan, Morton Buildings, Inc. purchased aggregate stop-loss insurance coverage from plan defendant Great–West.[5] Under the second plan, Morton Buildings, Inc. purchased stop-loss cover-

---

4. In contrast, the life insurance, accidental death, dismemberment, and loss of sight insurance benefits were funded by plan defendant, Great–West.

5. This insurance is triggered when the employer pays out claims in excess of a set amount. The affidavit of Kenneth L. Weaver, Treasurer of Morton Buildings, Inc. indicates that the trigger amount under this policy was $3,481,383 and that during plan year 1989, the total expenses incurred were $2,348,874.23. Thus, the stop-loss insurance was never utilized.

age from Manufacturers Life Insurance Co., which coverage provided both aggregate and specific excess coverage.[6] However, it appears from this Court's examination of the plan and the stop-loss policies that defendants are still primarily responsible to the employees for payment of benefits under the plan and that neither insurance company providing stop-loss insurance was ever liable to plan benefit recipients directly. The *Thompson* case, *supra*, specifically held that an employee health plan was self-funded despite stop-loss insurance obtained by the plan to protect it against claims in excess of $25,000. The Court in *Thompson* noted that, as in the case *sub judice*, the plan itself was directly liable to employees for any benefits owed them under the plan. On the basis of the argument presented, therefore, plaintiffs are clearly not entitled to judgment as a matter of law as the statute upon which they rely so heavily is preempted by ERISA.

Nevertheless, plaintiffs' fifth claim for relief charges that plan defendants have wrongfully deprived plaintiffs of their lawful benefits under the plan and have wrongfully refused to acknowledge their liability for these amounts. If it were clear from the terms of the plan that plaintiffs' allegation was true such that they would be entitled to judgment as a matter of law, plaintiffs' motion might yet be well-taken. Unfortunately, such is not the case.

In their answer to plaintiffs' first amended complaint, plan defendants assert as an affirmative defense that based upon the plan's excess insurance provision, they are not liable for payment of plaintiffs' medical expenses since a third party tortfeasor is totally responsible for the injuries sustained. Plan defendants also maintain through their second affirmative defense that payment of benefits under the plan is contingent upon the execution of certain documents by plaintiff, which documents plaintiffs have refused to execute.

Defendant Board warns this Court of its lack of authority to issue advisory opinions, citing Article III of the United States Constitution and *Flast v. Cohen*, 392 U.S. 83, 88 S.Ct. 1942, 20 L.Ed.2d 947 (1968). However, plaintiffs are before this Court seeking summary judgment declaring that they are entitled to immediate payment of benefits under the terms of an employee benefit plan. Although it is true that there is no subrogation claim currently pending before this Court, there is a live case or controversy with regard to the fifth claim for relief. In determining the rights of the parties under this claim, it is essential to determine the applicability of the state statute on which plaintiffs rely, which this Court has done. That determination, however, does not conclude this Court's decision.

The liability of the Board, whom plaintiffs allege is the sole tortfeasor, is yet to be determined. However, there is no dispute that the plan defendants here are not liable as tortfeasors in the underlying accident. Thus, the extent of the plan defendants' liability for the medical expenses incurred by plaintiff is solely dependent upon the terms of employee benefit plan under which plaintiffs assert coverage.

Plan defendants maintain that they are entitled to summary judgment on the fifth claim for relief for two reasons. First, they assert that the plan in question provides only excess insurance coverage in cases where, as here, a third-party tortfeasor is involved, with that third-party tortfeasor being primarily responsible for paying the Buchman's damages. Second, they maintain that the plaintiffs have failed to fulfill all conditions, namely the execution of a lien and reimbursement agreement, before the plan is obligated to pay out any benefits which may be due. Plan defendants acknowledge that they would have responsibility for paying the Buchmans' medical expenses under the terms of the plans if the Board is found to be not responsible for the Buchmans' medical expenses.

The employee benefit plans at issue in this case are valid enforceable con-

---

**6.** That policy set the aggregate amount at $1,000,000 and the specific amount at $100,000.

Defendants' exhibit I.

tracts. *Landro v. Glendenning Motorways, Inc.,* 625 F.2d 1344 (8th Cir.1980). This Court cannot require the plan to pay benefits to the plaintiffs in derogation of the express terms of the plans' contractual provisions. *Monsanto Co. v. Ford,* 534 F.Supp. 51 (E.D.Mo.1981). Moreover, the plan administrator's interpretation and application of the plans' requirement to condition payment upon execution of a lien and reimbursement agreement cannot be disturbed by this Court absent a finding that such interpretation was arbitrary, capricious or an abuse of discretion. *Davis v. Line Const. Ben. Fund,* 589 F.Supp. 146 (W.D.Mo.1984).

■ Requiring plaintiffs to execute a lien and reimbursement agreement is a proper exercise of a valid, contractual agreement. Thus, if plaintiffs expect to receive benefits under these plans, they must abide by the plan provisions and execute the required documents. Plaintiffs' concerns over the ramifications of such execution in light of Ohio Rev.Code § 2744.05(B) are understandable but without bearing on this simple fact. Moreover, these fears are unfounded as that statute is preempted by ERISA. For the foregoing reasons, it is clear that plan defendants here are entitled to summary judgment on the fifth claim for relief of plaintiffs' first amended complaint. It is therefore,

ORDERED that plaintiffs' second motion for summary judgment on the fifth claim for relief is hereby denied.

FURTHER ORDERED that plan defendants' cross motion for summary judgment is hereby granted.

FURTHER ORDERED that plan defendant Great–West's motion for summary judgment is hereby granted.

FURTHER ORDERED that defendant Board's motion to strike is hereby denied.