Linda HARVEY, Plaintiff,

v.

MACHIGONNE BENEFITS ADMINIS-TRATORS and Crowe Rope Industries Employee Benefits Plan, Defendants.

No. 00–CV–41–B.

United States District Court,
D. Maine.

Dec. 2, 2000.

N. Laurence Willey, Jr., Marie E. Hansen, Ferris, Dearborn & Willey, P.A., Brewer, for Linda Harvey, plaintiffs.

David C. King, Brent A. Singer, Rudman & Winchell, Bangor, Lee H. Bals, Marcus, Grygiel & Clegg, P.A., Portland, for Machigonne Benefits Administrators, Crowe Rope Industries Employee Benefits Plan, defendants.

## ORDER AND MEMORANDUM OF DECISION

SINGAL, District Judge.

Before the Court are three motions for summary judgment filed by Plaintiff, Linda Harvey, Defendant, Crowe Rope Industries Employee Benefits Plan ("the Plan"), and Defendant, Machigonne Benefits Administrators ("Machigonne"), respectively. (Docket # 8, # 10, # 11.) Also, the Court has before it a Motion in Limine filed by Defendant Machigonne to exclude the testimony of Plaintiff's expert witness (Docket # 13). Plaintiff claims that Defendants have violated the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. §§ 1001—1461, and certain Maine insurance statutes, 24–A M.R.S.A. §§ 2436–A, 2729–A, 2836. Defendant Machigonne has filed a counterclaim seeking declaratory relief pursuant to the Declaratory Judgment Act, 28 U.S.C. § 2201. The Court considers the four motions herein, but chooses not to consider Defendant Machi-

gonne's counterclaim at this time.[1] For the reasons discussed below, Plaintiff's Motion for Summary Judgment is DENIED, and Defendant the Plan's Motion for Summary Judgment is GRANTED. Defendant Machigonne's Motion for Summary Judgment is GRANTED to the extent that it challenges Plaintiff's claims. Consequently, Defendant Machigonne's Motion in Limine is rendered MOOT.

## I. STANDARD OF REVIEW

A federal court grants summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). The Court must view the facts "in the light most amicable to the party contesting summary judgment, indulging all reasonable inferences in that party's favor." *Pagano v. Frank,* 983 F.2d 343, 347 (1st Cir.1993). In this case, the relevant facts are not in dispute. Thus, the Court lays out below the facts of the case as described by the parties.

## II. BACKGROUND

On March 14, 1998, Plaintiff, Linda Harvey, was a passenger in an automobile owned and driven by John Curtis, her fiancé at the time. As Harvey and Curtis proceeded southward on North Searsport Road in Frankfort, Maine, another car driven by Sonia Mitchell approached from the opposite direction. Apparently exceeding the speed limit, Mitchell spun out of control, crossed the median, and struck the vehicle occupied by Harvey and Curtis.

The crash caused considerable injuries to Harvey, for which she incurred $23,377.05 in medical bills. Harvey was out of work for a total of nine weeks. Her base weekly salary was $346.50, so her total lost wages were $3,118.50. Her injuries have caused her permanent impairment and will require her to take medications for the rest of her life.

Apparently, Mitchell was at fault for the accident. Mitchell, however, was without car insurance at the time of the collision. Curtis' automobile was insured under a policy in his name with the Dairyland Insurance Company ("Dairyland"). The Dairyland policy provided for $20,000 in uninsured motorist coverage. Following settlement, Dairyland tendered $20,000 to Harvey.

Also, Harvey and Curtis had purchased a joint insurance policy on Harvey's vehicle (separate from Curtis' car) with Concord General Insurance Company ("Concord") in the amount of $100,000 for uninsured motorist coverage and $5,000 for medical coverage. Concord settled with Harvey in the amount of $36,000, $24,000 of which is being held in escrow per agreement of the parties.

At the time of the incident, Harvey was an employee of Crowe Rope Industries ("Crowe Rope"), a manufacturer of bulk rope, cordage and twine.[2] Crowe Rope established and maintained Defendant Crowe Rope Industries Employee Benefit

1. Plaintiff and Defendant Machigonne each have moved for summary judgment as to Defendant Machigonne's counterclaim. (Docket # 11, # 24.) (Defendant Machigonne moved for summary judgment on Plaintiff's claims and on its own counterclaim in the same motion. (*See* Docket # 11.)) Presently, it is not clear whether this Court has jurisdiction to grant declaratory judgment to Defendant Machigonne. *See, e.g., Gulf Life Ins. Co. v. Arnold,* 809 F.2d 1520, 1524–25 (11th Cir. 1987) (affirming district court holding that ERISA fiduciary cannot bring declaratory action against plan participant); *Transamerica Occidental Life Ins. Co. v. DiGregorio,* 811 F.2d 1249, 1253 (9th Cir.1987) (affirming that the district court had subject matter jurisdiction to hear declaratory action by ERISA fiduciary against plan participant). Thus, the Court does not consider the counterclaim herein.

2. Also, Plaintiff insists that it is relevant that JPB Enterprises, Inc. operates as a holding company for Crowe Rope.

Plan, which Defendants characterize as a self-funded employee welfare benefit plan pursuant to section 1002(1) of the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. §§ 1001—1461. The Plan provides medical benefits to Crowe Rope's employees. Defendant Machigonne Benefits Administrators is a private company that administers the Plan as a service to Crowe Rope. As an employee of Crowe Rope, Harvey was a participant in the Plan. She paid contributions to the Plan, which she characterizes as a health insurance plan.

The Plan, Crowe Rope and Machigonne do not issue insurance policies, nor do they have licenses to do so. The Plan, however, is backed by a stop-loss insurance policy provided by LDG/State Mutual. Stop-loss insurance reimburses a plan in the event that the costs of providing medical benefits exceed the plan's budget. An insurance agency, Healey & Associates, helped Crowe Rope design the Plan and acted as a broker for the purchase of the stop-loss policy. The Plan has not purchased health insurance to cover its participants.

To date, neither the Plan nor Machigonne have given any funds to Harvey in regard to the injuries she sustained on March 14, 1998. She has used the disbursements from Dairyland and Concord to pay for some of her medical bills. Currently, Harvey is unable to pay some of her outstanding bills, and her credit rating suffers. Defendants contend that they will cover Harvey's medical expenses, but only after she signs a subrogation agreement, according to language in the Plan's operating document (the "Plan Document"). The Plan Document states in pertinent part:

> In the event of an accident or illness which may give rise to a right of recovery by a covered person from a third party, the right to receive benefits under this Plan shall be conditioned upon the covered person, or his/her personal representatives delivering to the Plan a signed agreement to repay amounts recovered from a third party.

(Plan Document at VII–1.) [3] Based on this language, Defendants have refused to pay

---

**3.** The entire provision reads:

A. RIGHT OF SUBROGATION AND REIMBURSEMENT

If the Plan pays benefits on account of a covered employee or dependent, such covered person or organization that was paid must reimburse the Plan if:

1. All or some of the expenses were not paid by the covered person or did not legally have to be paid;
2. All or some of the payment made by the Plan exceeded the benefits under this Plan;
3. All or some of the expenses were recovered from or paid by a source other than this Plan. This may include payments made as a result of claims against a third party of negligence, wrongful acts or omissions;

In the event of an accident or illness which may give rise to a right of recovery by a covered person from a third party, the right to receive benefits under this Plan shall be conditioned upon the covered person, or his/her personal representatives delivering to the Plan a signed agreement to repay amounts recovered from a third party.

Upon any recovery, whether by judgment, suit, compromise, settlement or otherwise,

made by a covered person from any person(s), party or parties, insurance company, firm or corporation, the Plan Administrator, with or without filing a lien, shall be entitled to immediate reimbursement, as described above, to the extent of benefits paid by the Plan.

By accepting benefits under this Plan, a covered person agrees to reimburse the Plan Administrator for benefits paid in the event of such recovery. The Plan will be subrogated to all rights the covered person may have against that third party. If reimbursement is due from another person or organization, the covered person agrees to help the Plan Administrator receive reimbursement when requested.

Reimbursement will equal the amount the Plan paid in excess of the amount if should have paid. In the case of recovery from or payment by a source other than this Plan, reimbursement will equal the amount of the recovery or payment up to the amount the Plan paid.

The Plan may coordinate benefits with automobile, homeowner's general liability and any other third party policies. However, the Plan may not exercise this right of recovery against the proceeds of any individual policy

for any of Harvey's medical expenses until she signs a subrogation agreement. Harvey, however, has refused to sign the subrogation agreement because she argues that such a demand is unfair and violative of Maine's insurance laws.

In her Complaint, Harvey alleges that the Plan and Machigonne have violated ERISA, 29 U.S.C. §§ 1001–1461 (Count I) and portions of Maine's insurance code, 24–A M.R.S.A. §§ 2729–A, 2836 (Count II), and 24–A M.R.S.A. § 2436–A (Count III). Harvey requests that the Court order Defendants to pay her medical bills and decree that Defendants are not entitled to repayment from the funds that Harvey has received from Concord and Dairyland. In Count III, Harvey makes the additional demand that Defendants pay compensatory damages for emotional distress plus punitive damages. Also, Harvey asks for attorney fees, interest and costs.

With its answer, Machigonne filed a counterclaim against Harvey, asking the Court to issue a declaratory judgment decreeing that Harvey is not entitled to any payments from either Defendant until she signs the disputed subrogation agreement, and that neither Defendant is subject to regulation as an insurer under 24–A M.R.S.A. § 2436–A with respect to matters relating to the administration of the Plan. Machigonne also asks for attorney fees and costs. Soon thereafter, all of the parties moved for summary judgment as to Plaintiff's claims.

DISCUSSION

A. Plaintiff's ERISA Claim

Plaintiff asserts that Defendants' refusal to pay her medical expenses violates ERISA, 29 U.S.C. §§ 1001–1461. ERISA

of insurance issued to an individual in his/her name, unless the individual's legal action or claim is based on an uninsured or underinsured motorist provision in such policy. If an individual retains an attorney in regard to a claim against a third party, the attorney's fee is the individual's responsibility and cannot be deducted from the recovery amounts paid to the Plan.

comprehensively regulates, among other things, employee welfare benefit plans that provide medical, surgical, or hospital care, or benefits in the event of sickness, accident, disability or death. *See* 29 U.S.C. § 1002(1); *Pilot Life Ins. Co. v. Dedeaux,* 481 U.S. 41, 44, 107 S.Ct. 1549, 95 L.Ed.2d 39 (1987). Designed to provide employers throughout the United States with consistency in how they manage their benefits plans, ERISA includes a provision broadly preempting state law. *See* 29 U.S.C. § 1144(a) ("... the provisions of this subchapter and subchapter III of this chapter shall supercede any and all State laws insofar as they may now or hereafter relate to any employee benefit plan..."); *Fort Halifax Packing Co. v. Coyne,* 482 U.S. 1, 9, 107 S.Ct. 2211, 96 L.Ed.2d 1 (1987) (preemption provision designed to create consistency for employers). At the same time, ERISA specifies that "nothing in this subchapter shall be construed to exempt or relieve any person from any law of any State which regulates insurance, banking, or securities." 29 U.S.C. § 1144(b)(2)(A). Thus, federal law governs employer benefits plans, while state law regulates insurance. *See, e.g., FMC Corp. v. Holliday,* 498 U.S. 52, 58, 111 S.Ct. 403, 112 L.Ed.2d 356 (1990).

1. Plaintiff's Arguments Based on the Terms of the Plan

■ Citing section 1132 of ERISA, Plaintiff maintains that Defendants are obligated to pay her medical bills. The relevant statutory provision states

A civil action may be brought—

(1) by a participant or beneficiary—

...

If a covered person, or any other person, or organization that was paid, does not promptly reimburse the full amount, the Plan Administrator may reduce the amount of any future benefits that are payable under the Plan. The reduction will equal the amount of the required reimbursement. The Plan or the employer may have other rights in addition to the right to reduce future benefits.

(B) to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan;

29 U.S.C. § 1132(a). Defendants have refused to pay Plaintiff's medical expenses. Defendants argue that they are entitled to refuse payment because the terms of the Plan state that "the right to receive benefits under this Plan shall be conditioned upon the covered person, or his/her personal representatives delivering to the Plan a signed agreement to repay amounts recovered from a third party." (Plan Document at VII–1.) Despite Plaintiff's contentions to the contrary, such a subrogation requirement does not violate ERISA, and is a valid term of an ERISA benefits plan. *See, e.g., Harris v. Harvard Pilgrim Health Care, Inc.,* 208 F.3d 274, 281–82 (1st Cir.2000) (holding that benefit plan may seek reimbursement from plan participant under plan's subrogation clause); *Southern Council of Indus. Workers v. Ford,* 83 F.3d 966 (8th Cir.1996) (same); *Ryan v. Fed. Express Corp.,* 78 F.3d 123, 127–28 (3rd Cir.1996) (same).[4]

■ Next, Plaintiff argues that the terms of the Plan favor her demand for recovery because one provision is ambiguous and another provision prevents Defendants from seeking subrogation from jointly-held insurance policies. First, Plaintiff asserts that the Plan Document is vague because it fails to specify what steps the Plan may take in her particular situation. Following settlement, Plaintiff recovered $20,000 from her fiancé's policy with Dairyland. Following another settlement, Plaintiff received $12,000 from a policy, jointly held by herself and her fiancé, with Concord. According to the settlement with Concord, another $24,000 remains in escrow. Plaintiff argues that the Plan Document does not specify whether the Plan may seek reimbursement from an insurance policy purchased by someone other than the plan participant or from a policy jointly held by the plan participant and someone else. The subrogation provision of the Plan Document, however, states

Upon *any* recovery, whether by judgment, suit, compromise, *settlement* or otherwise, made by a covered person from *any* person(s), party or parties, insurance company, firm or corporation, the Plan Administrator, with or without filing a lien, shall be entitled to immediate reimbursement, as described above, to the extent of benefits paid by the Plan.

(Plan Document at VII–1 (emphasis added).) The language of the Plan Document is not restrictive; rather, it bestows upon the Plan a right of subrogation to stand in Plaintiff's shoes and to seek reimbursement from any third party. Thus, the Court finds no ambiguity or confusion in the Plan Document's application to this case.

■ Plaintiff next assails the Plan Document by arguing that it expressly does not apply to jointly-held insurance policies. Plaintiff makes reference to another clause of the Plan Document's subrogation provision, which reads

The Plan may coordinate benefits with automobile, homeowner's general liability and any other third party policies. However, the Plan may not exercise this right of recovery against the proceeds of any individual policy of insurance issued to an individual in his/her name, unless the individual's legal action or claim is based on an uninsured or underinsured motorist provision in such policy.

(Plan Document at VII–1.) Plaintiff emphasizes that this language specifically does not allow the Plan to recover funds from jointly-held insurance policies. Actually, the plain language of this paragraph

---

**4.** Plaintiff cites *Cement Masons Health & Welfare Trust Fund v. Stone,* 197 F.3d 1003 (9th Cir.1999), which held that an ERISA plan could not sue a plan participant for reimbursement. *See id.* at 1005–07. This ruling by the Ninth Circuit, however, differs from decisions by other circuits, including the First Circuit. *See, e.g., Harris,* 208 F.3d at 281–82.

forbids the Plan from recovering against an individual insurance policy, unless recovery is based on an uninsured or underinsured motorist provision. In the present case, Plaintiff has recovered on two different insurance policies based on the uninsured motorist provisions of both policies. Thus, this paragraph does not prevent the Plan from seeking reimbursement from Plaintiff.

2. Plaintiff's Arguments Based on Maine Law

After dispensing with Plaintiff's arguments that she must prevail under the terms of the Plan, the Court now turns to the heart of Plaintiff's claims: that the subrogation provision violates ERISA because it contravenes Maine insurance laws. Here, Plaintiff enters dangerous territory because the general rule is that ERISA preempts state law. *See* 29 U.S.C. § 1144(a). As Plaintiff points out, however, ERISA does not preempt the authority of the States to regulate insurance. *See* 29 U.S.C. § 1144(b)(2)(A). To that end, Plaintiff insists that Defendants have ventured into the "business of insurance," making them susceptible to Maine's insurance laws.

■ Case law draws a distinction between two types of ERISA plans: plans that purchase insurance to cover their employees ("insured" plans) and plans that do not ("uninsured", "self-insured" or "self-funded" plans). *See, e.g., Metropolitan Life Ins. Co. v. Massachusetts*, 471 U.S. 724, 747, 105 S.Ct. 2380, 85 L.Ed.2d 728 (1985). Because insured plans have entered into insurance contracts with insurers, those plans often must comply with state insurance laws. *See, e.g., id.* Conversely, self-funded plans generally are exempt from state insurance laws. *See, e.g., FMC Corp. v. Holliday*, 498 U.S. 52, 61, 111 S.Ct. 403, 112 L.Ed.2d 356 (1990) ("State laws that directly regulate insurance ... do not reach self-funded employee benefit plans because the plans may not be deemed to be insurance companies, oth-

er insurers, or engaged in the business of insurance for purposes of such state laws."). In fact, courts have specifically held that even if state law prohibits subrogation requirements, self-funded plans are exempt from such laws and may feature subrogation provisions. *See, e.g., FMC Corp.*, 498 U.S. at 58–65, 111 S.Ct. 403 (ERISA preempts Pennsylvania's anti-subrogation laws for self-funded plans); *Provident Life & Accident Ins. Co. v. Linthicum*, 930 F.2d 14, 16 (8th Cir.1991) (ERISA preempts Arkansas' anti-subrogation laws for self-funded plans).

■ Thus, the question becomes whether or not Defendant the Plan is self-funded. In support of her argument that the Plan is not self-funded, Plaintiff points to several uncontroverted facts: that an insurance agency helped Crowe Rope design the Plan, that the Plan is covered by stop-loss insurance, that an insurance agency acted as a broker for the purchase of that stop-loss insurance, that she and other plan participants contributed some of their own money to the Plan, and that Crowe Rope is subject to some measure of control by a holding company. These characteristics, however, fail to classify the Plan as insured rather self-funded.

■ First, it is well-settled that a plan covered by stop-loss insurance still is considered self-funded, and exempt from state insurance laws. *See, e.g., Lincoln Mut. Cas. Co. v. Lectron Prods., Inc., Employee Health Benefit Plan*, 970 F.2d 206, 210 (6th Cir.1992) (holding that even though an ERISA plan had stop-loss coverage, the plan was still self-funded and not subject to state insurance laws); *Brown v. Granatelli*, 897 F.2d 1351, 1355 (5th Cir.1990) (same); *United Food & Commercial Workers & Employers Arizona Health & Welfare Trust v. Pacyga*, 801 F.2d 1157, 1161–62 (9th Cir.1986) (same); *see also, e.g., American Med. Sec., Inc. v. Bartlett*, 111 F.3d 358, 364–65 (4th Cir.1997) (holding that state could not regulate how bene-

fits plans obtain stop-loss insurance).[5] Rather, in *FMC Corporation v. Holliday*, 498 U.S. 52, 111 S.Ct. 403, 112 L.Ed.2d 356 (1990), the United States Supreme Court held that if an ERISA plan owns insurance, then state law may apply to the plan's insurer, but not directly to the plan. *See id.* at 61, 111 S.Ct. 403. Thus, even though the Plan in this case has stop-loss insurance, Maine law does not apply to the Plan.[6] Maine law applies to the Plan's stop-loss insurer, LDG/State Mutual, but LDG/State Mutual is not a party to this action, nor has it acted to induce Plaintiff to sign the disputed subrogation agreement. Similarly, state law regulates Healey & Associates, the insurance agency that aided Crowe Rope in structuring the Plan and in purchasing the stop-loss policy from LDG/Mutual. Likewise, Plaintiff has not named Healey & Associates as a defendant, nor has Plaintiff alleged that Healey & Associates has done anything adverse to her. Moreover, the Court finds it irrelevant that Defendants hired Healey & Associates to help structure the Plan and to act as broker.

■ Second, Plaintiff incorrectly argues that the Plan is insured rather than self-funded because she and other Crowe Rope employees contributed funds to the Plan. Rather, a plan is normally considered self-funded when employees contribute to it. *See, e.g., Buchman v. Wayne Trace Local Sch. Dist. Bd. of Educ.*, 763 F.Supp. 1405, 1409–10 (N.D.Ohio 1991) (holding that plan is self-funded by virtue of contributions from employer and employees); *Cuttle v. Fed. Employees Metal Trades Council*, 623 F.Supp. 1154, 1155, 1157 (D.Me.1985) (preempting state law from applying to self-funded ERISA plan, even though employees contributed to it).

Third, Plaintiff argues that because employees contribute to the Plan and because a holding company has Crowe Rope in its portfolio, there has been a spreading of the risk, so Defendants are in the "business of insurance" within the meaning of the McCarran–Ferguson Act, 15 U.S.C. §§ 1011–1015.[7] Plaintiff cites *Metropolitan Life Ins. Co. v. Massachusetts*, 471 U.S. 724, 105 S.Ct. 2380, 85 L.Ed.2d 728 (1985), where the Supreme Court utilized the McCarran–Ferguson "business of insurance" analysis, which includes a look at risk-spreading, to determine whether a state statute went beyond regulating insurance and infringed on ERISA's territory of employee benefits plans. *See id.* at 743, 105 S.Ct. 2380. The Court in *Metropolitan Life* held that ERISA did not preempt a state insurance statute to the extent that it applied to health insurance policies purchased by ERISA plans to provide coverage for plan participants. *See id.* at 746–47, 105 S.Ct. 2380. The present case is easily distinguishable, because Defendants have not purchased health insurance to cover the Plan's participants. Plaintiff cites no cases extending the spreading-of-the-risk analysis to plans that do not purchase health insurance for their participants. Rather, precedent swings in

---

**5.** The Second Circuit stated

> Self-insured employee benefit plans and their employer sponsors … often purchase stop-loss insurance to protect themselves against excess or catastrophic losses. Unlike traditional group-health insurance, stop-loss insurance is akin to reinsurance in that it does not provide coverage directly to plan members or beneficiaries. Rather, most stop-loss policies … provide coverage to the plan itself if the total amount of claims paid by the plan exceeds the amount of anticipated claims by a specified sum.

*Travelers Ins. Co. v. Cuomo*, 14 F.3d 708, 723 (2nd Cir.1993), *reversed on other grounds*, 514

U.S. 645, 115 S.Ct. 1671, 131 L.Ed.2d 695 (1995).

**6.** In its argument that the Plan is subject to state insurance laws based on its ownership of stop-loss insurance, Plaintiff erroneously relies on *Northern Group Servs., Inc. v. Auto Owners Ins. Co.*, 833 F.2d 85, 91 (6th Cir. 1987). In *Lincoln*, the Sixth Circuit expressly held that *Northern*'s holding on this matter was no longer viable in light of *FMC. See Lincoln*, 970 F.2d at 210 n. 3.

**7.** The McCarran–Ferguson Act explicitly leaves to the States the authority to regulate insurance.

Defendants' favor. *See, e.g., G.R. Herberger's, Inc. v. Erickson,* 17 F.Supp.2d 932 (D.Minn.1998) (preempting state law from applying to self-funded ERISA plan, even though employees contributed to it and it was covered by stop-loss insurance); *Bergin v. Wausau Ins. Cos.,* 863 F.Supp. 34, 35 n. 1 (D.Mass.1994) (same); *Cuttle,* 623 F.Supp. at 1155, 1157 (same).

Not only is Plaintiff's spreading-of-the-risk argument not supported by case law, but also such an argument completely undermines ERISA, which, at its core, spreads medical costs between co-employees who work for a common employer. If Plaintiff and her co-workers did not contribute portions of their paychecks to the Plan, then Crowe Rope simply would reduce employees' wages to finance the Plan. Furthermore, the Court finds nothing relevant in the fact that a holding company has Crowe Rope in its portfolio. Thus, the Court is unpersuaded that *Metropolitan Life* stands for the proposition that employee contributions or holding companies are relevant in determining whether or not a plan is self-funded.

For the foregoing reasons, the Court agrees with Defendants' characterization that the Plan is self-funded. The Court concludes that Maine's insurance laws do not apply to Defendants, and therefore, the Court enters summary judgment in favor of Defendants against Count I of Plaintiff's Complaint.

B. Plaintiff's State Law Claims

Counts II and III are based on provisions of Maine's insurance code, 24–A M.R.S.A. §§ 2436–A, 2729–A, 2836. These three sections apply to those involved in the business of insurance.[8] Based on the

above analysis, Maine's insurance laws do not apply to Defendants.

■ In a final effort to save her claims from summary judgment, Plaintiff argues that Defendants have acted in bad faith, and suggests that such a claim of bad faith is not necessarily preempted by federal law, even for self-funded plans. Plaintiff bases this novel argument on *UNUM Life Insurance Company of America v. Ward,* 526 U.S. 358, 119 S.Ct. 1380, 143 L.Ed.2d 462 (1999), which is easily distinguishable from the present case because *UNUM* did not include any claim of bad faith and it involved an insured benefits plan (as opposed to a self-funded plan). *See id.* at 363–64, 376 n. 7, 119 S.Ct. 1380. Moreover, the Supreme Court ruling of *Pilot Life Insurance Company v. Dedeaux,* 481 U.S. 41, 107 S.Ct. 1549, 95 L.Ed.2d 39 (1987), specifically held that ERISA preempted a state bad faith claim because the state bad faith law did not specifically regulate insurance. *See id.* at 50–51, 107 S.Ct. 1549. In the present case, Plaintiff brings its bad faith claim under an insurance statute, 24–A M.R.S.A. § 2836. As discussed above, however, Maine's insurance statutes do not apply to the Plan because it is self-funded. Therefore, the Court disagrees with Plaintiff's argument that *UNUM* stands for the proposition that a plan participant may bring a state bad faith claim against a self-funded ERISA plan.[9] In any event, viewing the record in a light most favorable to Plaintiff, the Court finds no facts showing that Defendants have acted in bad faith. Rather, they have comported with the language of the Plan Document. Thus, Plaintiff's bad faith claim must fail as well.

Plaintiff's remaining arguments are grounded in state law, and thus inapplica-

---

8. Section 2436–A falls within Title 24–A, Chapter 27. The scope provision of Chapter 27, 24–A M.R.S.A. § 2401, states that this chapter applies to insurance contracts. Title 24–A, Chapter 33 includes sections 2729–A and 2836. Similarly, the scope provision of Chapter 33, 24–A M.R.S.A. § 2701, states that Chapter 33 applies to insurance contracts.

9. In support of his bad faith argument, Plaintiff cites additional cases, such as *Humana Inc. v. Forsyth,* 525 U.S. 299, 119 S.Ct. 710, 142 L.Ed.2d 753 (1999), and *Connors v. Maine Med. Ctr.,* 70 F.Supp.2d 40 (D.Me. 1999), which the Court finds unpersuasive on this issue.

ble to this case.[10] Therefore, the Court finds that Plaintiff has no viable cause of action against Defendants under Counts II and III.

## IV. CONCLUSION

For the reasons discussed above, Plaintiff's Motion for Summary Judgment is DENIED (Docket # 8) and Defendant the Plan's Motion for Summary Judgment is GRANTED (Docket # 10). As well, Defendant Machigonne's Motion for Summary Judgment is GRANTED to the extent that it challenges Plaintiff's claims (Docket # 11). The Court reserves ruling on Defendant Machigonne's counterclaim. Additionally, by granting summary judgment in favor of Defendants, Defendant Machigonne's Motion in Limine is MOOT (Docket # 13).

SO ORDERED.

---

**10.** For example, Plaintiff argues that Defendants cannot seek subrogation because Plaintiff has not been "made whole." The First

Circuit, however, has expressly held that the make whole doctrine does not apply to ERISA plans. *See Harris,* 208 F.3d at 281.